IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

------------------------------------------------------x

THOMAS D. ARTHUR,

               Plaintiff,

       v.

TROY KING, ATTORNEY GENERAL
FOR THE STATE OF ALABAMA,
in his official capacity,

BRYCE U. GRAHAM, JR., DISTRICT
ATTORNEY FOR COLBERT COUNTY,
in his official capacity,

RONNIE MAY, SHERIFF FOR
COLBERT COUNTY,
in his official capacity,

M. DAVID BARBER, DISTRICT
ATTORNEY FOR JEFFERSON COUNTY,
in his official capacity,

            Defendants.

------------------------------------------------------x

CIVIL ACTION NO. CV _2:07CV319-WK_

## **COMPLAINT**

    Thomas D. Arthur brings this civil rights action under 42 U.S.C. § 1983

seeking access to physical evidence—including a rape kit and blood stained clothing—

that has never been subjected to DNA testing. Defendants have refused to search for

and/or provide access to such evidence that could provide powerful, exculpatory evidence

demonstrating that Mr. Arthur was wrongfully convicted and sentenced to death.

**INTRODUCTION**

1.      In 1991, Mr. Arthur was convicted of murdering Troy Wicker at his home in Muscle Shoals, Alabama.  No physical evidence linked Mr. Arthur to the crime. Instead, his conviction was based almost exclusively on the testimony of a convicted murderer and admitted perjurer, the victim's wife, Judy Wicker.  Although Judy Wicker also implicated two others in the murder of Troy Wicker who had a reason for wanting him dead, they were never prosecuted by the State of Alabama.

2.      At the time she testified against Mr. Arthur, Judy Wicker was serving a life sentence for the same crime.  In exchange for Judy Wicker's testimony against Mr. Arthur, the state prosecutor—who had an unavoidable conflict of interest because he had previously represented her in connection with her parole proceedings—offered the ultimate deal:  assist in the prosecution of Mr. Arthur and obtain early parole.  Although Judy Wicker previously had testified under oath at her own trial that Mr. Arthur was not involved in her husband's murder, she changed her story when she testified against Mr. Arthur and thereby secured her freedom.

3.      Aside from Judy Wicker's clear motive to implicate Mr. Arthur and her proven track record of lying, other compelling reasons demonstrate that her testimony against Mr. Arthur was a fabrication.  For example, the physical evidence recovered from the crime scene did not support, and in some instances contradicted, the account of events she gave at Mr. Arthur's trial.  Moreover, two credible alibi witnesses (who did not testify before the jury because defense counsel failed to conduct minimal fact investigation) have corroborated Mr. Arthur's assertion that he was nowhere near the Wicker residence on the morning Troy Wicker was murdered.

– 2 –

4.     That Mr. Arthur could be convicted and sentenced to death on paltry and unreliable evidence is attributable largely to the fact that he was denied effective assistance of counsel.  Prior to trial, Mr. Arthur's appointed counsel conducted virtually no independent investigation into either the underlying crime or potential mitigating evidence, and they were wholly unprepared to defend this capital case.  Moreover, on the first day of trial, the trial court inexplicably permitted Mr. Arthur—whose sole experience in a courtroom was as a defendant—to represent himself.  The trial court agreed to this without first conducting an inquiry into whether Mr. Arthur's waiver of his right to counsel was made knowingly and voluntarily.  Not surprisingly, Mr. Arthur's efforts at trial were severely hampered by his inability to undertake any factual investigation, his lack of legal training, and the absence of the informed, objective advice of experienced trial counsel.

5.     Mr. Arthur's claims relating to his actual innocence and the constitutional violations at his trial and sentencing have never been reviewed by any post-conviction court.  Although Mr. Arthur filed a state post-conviction petition, the Alabama courts refused to review his claims on the merits because his petition was untimely filed.  By strictly enforcing the limitations period against Mr. Arthur—a death row inmate who did not receive notice of the certificate of judgment triggering the limitations period, who was not represented by counsel during the relevant period, who had no access to any form of legal assistance, and who was deprived of access to adequate law library facilities—the State of Alabama violated Mr. Arthur's constitutional rights to due process, counsel, and access to the courts.

6.     Mr. Arthur's substantial constitutional claims also have never been reviewed on the merits by a federal court.  Notwithstanding Mr. Arthur's diligence in attempting to present his collateral claims and the circumstances that prevented him from doing so, the district court refused to toll the limitations period and dismissed his *first* federal habeas petition as untimely.  Although Mr. Arthur presented compelling evidence of actual innocence, the district court disregarded sworn affidavits of two alibi witnesses without even holding a hearing to resolve factual disputes.

7.     Consequently, Mr. Arthur stands to be executed without ever having received *any* state or federal collateral review of his trial and death sentence.

8.     Mr. Arthur brings this lawsuit to obtain critical evidence for purposes of DNA and other testing at no cost to the State of Alabama.  Defendants have failed to assert any valid reason for refusing to search for and release the requested evidence.

## JURISDICTION

9.     This Court has jurisdiction over the subject matter of this complaint pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4).  *See Bradley* v. *Pryor*, 305 F.3d 1287 (11th Cir. 2002).

10.     The relief requested is injunctive in nature.  Mr. Arthur also disclaims any attempt to challenge his conviction and sentence of death with this lawsuit, and instead focuses solely on the search for and release of physical evidence as described below for DNA and other testing.

11.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), because at least one of the Defendants maintains his principal place of business within this District.  Specifically, the Attorney General for the State of Alabama, to whom all other Defendants

– 4 –

defer in their decisions to release evidence to the Plaintiff, maintains his principal place of business within this District. All of the Defendants maintain their principal places of business within the State of Alabama.

## THE PARTIES

12.     Mr. Arthur is presently incarcerated under a sentence of death at the Holman Correctional Facility in Atmore, Alabama.

13.     Defendant Troy King is the Attorney General for the State of Alabama. As the Attorney General, Mr. King is responsible for formulating policy relating to access to evidence within the possession and/or control of the Attorney General's Office of the State of Alabama and other state law enforcement agencies. Mr. King is also responsible for determining whether a convicted person will be provided access to biological evidence for post-conviction DNA testing.

14.     Defendant Bryce U. Graham, Jr. is the District Attorney for Colbert County in the State of Alabama. As the District Attorney, Mr. Graham controls policy relating to access to evidence within the possession and control of the Office of the District Attorney of Colbert County. On information and belief, he also controls whether a convicted person will be provided access to biological evidence for post-conviction DNA testing.

15.     Defendant Ronnie May is the Sheriff of Colbert County. The Colbert County Sheriff's Department is the investigating agency of the political subdivision of Colbert County.

16.     Defendant M. David Barber is the District Attorney for Jefferson County in the State of Alabama. As the District Attorney, Mr. Barber controls policy relating to

access to evidence within the possession and control of the Office of the District Attorney. On information and belief, he also controls whether a convicted person will be provided access to biological evidence for post-conviction DNA testing.

17.     At all times pertinent to this case, Defendants were acting under the color of state law. They are being sued in their official capacities.

### MR. ARTHUR'S TRIAL AND CONVICTION

18.     On February 1, 1982 at 9:12 a.m., the police responded to a call at the Wicker residence in Muscle Shoals, Alabama, where they found Judy Wicker lying on the floor with traces of blood on her face and her sister Teresa Rowland kneeling beside her. The police also found Troy Wicker's body in the bedroom with a single gunshot wound to the right eye.

19.     The police collected physical evidence from the crime scene, including Judy Wicker's blood-stained clothing and torn undergarment, vacuum sweepings, hair samples, shell casings, and a pillowcase with gunpowder flakes. The police also dusted the area for latent fingerprints, but did not search Judy Wicker, her sister, or any of their possessions. The police located Judy Wicker's 1981 Buick Riviera, which had been abandoned in a parking lot; the police searched it and found a wig, hair samples, and latent fingerprints. The murder weapon was never recovered.

20.     After the shooting, Judy Wicker was taken to the hospital and remained there for several days. She suffered a bruise around her left eye, a laceration of her left upper lip, two chipped teeth, and an abrasion on her left hip. Moreover, a rape kit was prepared and seminal fluid collected. In response to questioning by investigators at the hospital, Judy Wicker provided the following account of the crime: She returned home

after dropping her children off at school.  When she entered her house, she found an

African-American man burglarizing her home.  The intruder raped her, knocked her

unconscious, and then shot Troy Wicker.

21.     Judy Wicker was eventually charged with her husband's murder under the

theory that she killed him to collect approximately $90,000 in life insurance proceeds.  At

her trial in 1982, she testified under penalty of perjury to the same version of events that

she had related to the investigators.  Despite her claims of innocence, Judy Wicker was

convicted of murdering her husband and was sentenced to life imprisonment.

22.     At Mr. Arthur's trial in 1991, Judy Wicker gave a completely different

account of the murder.  Although she previously had sworn under oath that Mr. Arthur

was not involved in the murder of her husband, she now claimed that she, along with

Teresa Rowland and her sister's boyfriend, Theron McKinney, had decided to kill Troy

Wicker, and that she had paid Mr. Arthur to pull the trigger.  She also paid Rowland

$6,000 and gave McKinney jewelry and a Trans Am in exchange for their assistance in

carrying out the murder.  The State of Alabama, however, never prosecuted Rowland or

McKinney.

23.     The failure of the State to pursue the investigation and prosecution of

these two suspects is particularly troublesome considering that Teresa Rowland had her

own reasons for wanting Troy Wicker dead.  She had previously hired Troy Wicker to

burn her house down so that she could collect insurance proceeds; however, she was

unable to pay him the promised amount, so he had threatened to have her arrested for

arson.  Rowland also had the opportunity to murder Troy Wicker—she had her own key

to the Wicker residence and was free to come and go as she pleased. Most significantly, Rowland was present at the Wicker house on the morning of the murder.

24.     At the time she testified against Mr. Arthur, Judy Wicker was serving a life sentence for the same crime. In return for her testimony, the state prosecutor, Gary Alverson, promised to make a parole recommendation on her behalf. Prior to becoming a state prosecutor, Alverson had represented Judy Wicker and assisted her in procuring a deal from the then-prosecutor in exchange for her testimony. Thus, the State's prosecutor offered his former client the ultimate deal: assist in the prosecution of Mr. Arthur and obtain early parole. Mr. Arthur's rights to due process and a fair trial were violated due to the prosecutor's irreconcilable conflict of interest.

25.     Mr. Arthur was convicted of capital murder after a three-day trial at which he was permitted to represent himself. The trial court did not hold a hearing or engage in a colloquy to determine whether Mr. Arthur's decision was knowing and voluntary prior to granting Mr. Arthur's request to represent himself. Such failure to ensure that Mr. Arthur's decision to represent himself was knowing and voluntary violated the Sixth and Fourteenth Amendments.

26.     No physical evidence linked Mr. Arthur to the murder of Troy Wicker. The hair samples and fingerprints found at the crime scene and in Judy Wicker's 1981 Buick Riviera were tested, but they did not match Mr. Arthur's. Mr. Arthur's conviction was based almost exclusively on the testimony of Judy Wicker, a convicted murderer and admitted perjurer.

27.     The penalty phase that followed lasted less than an hour and a half. Mr. Arthur's counsel conducted no independent investigation and offered no mitigation

testimony. In violation of Mr. Arthur's constitutional right to effective assistance of counsel, Mr. Arthur's trial counsel failed to adequately investigate mitigation evidence, and appellate counsel failed to argue such failure on direct appeal.

28.    On December 5, 1991, Mr. Arthur was convicted of capital murder for the 1982 killing of Troy Wicker. On the same day, the jury recommended the death penalty by a vote of 11–1.

## REQUESTED EVIDENCE

29.    In connection with its investigation of the murder of Troy Wicker, the State of Alabama collected various pieces of evidence as set forth in memoranda prepared by officials at the State's Department of Forensics: (i) Memorandum to File by John H. Kilbourn, dated March 4, 1982 (Attached as Exhibit 1); (ii) Memorandum to File by Rodger Morrison, dated March 16, 1982 (Attached as Exhibit 2); (iii) Memorandum to File by J.G. Wallace, dated April 28, 1982 (Attached as Exhibit 3); and (iv) Memorandum to File by Brent A. Wheeler, dated May 7, 1982 (Attached as Exhibit 4) (collectively, the "Forensics Memoranda"). Mr. Arthur seeks access all items listed in the Forensics Memoranda, including Judy Wicker's clothing, Judy Wicker's rape kit, the wig, hair samples, vacuum sweepings, spent cartridges, the pillowcase and the bullet, as well as photographs presented as trial exhibits (the "Requested Evidence").

30.    The requested evidence can be categorized into six groups: (i) Judy Wicker's clothing, (ii) the rape kit created the day of the murder, (iii) the wig and hair samples found in Judy Wicker's car, (iv) vacuum sweepings and a hair sample from the Wicker residence, (v) spent cartridges and a pillowcase found beside Troy Wicker's

body, as well as the bullet removed from Troy Wicker's body, and (vi) photographs taken at the crime scene.

31.    Judy Wicker's Clothing. The State submitted Judy Wicker's bloodstained blouse, pants, and ripped undergarments to criminologist John Kilbourn, but Mr. Kilbourn never tested these items for blood typing or DNA. At trial, the prosecution argued that Judy Wicker and Mr. Arthur concocted a story that she had been raped and beaten up by an African-American man who then killed Troy Wicker, but that it was actually Mr. Arthur who had assaulted her and killed her husband. Testing Judy Wicker's clothing could show that someone other than Mr. Arthur assaulted her and was present in the Wicker residence when Troy Wicker was murdered. These items are in the custody of the Jefferson County Circuit Court.

32.    Judy Wicker's Rape Kit. Judy Wicker's rape kit was prepared when she was taken to the hospital shortly after the police arrived to investigate the murder, and the State sent the kit to criminologist Rodger Morrison. The rape kit was never subjected to DNA testing. But such testing could prove that someone other than Mr. Arthur raped Judy Wicker—a fact that would be consistent with her original testimony that a burglar raped her and murdered her husband. The location of the rape kit is unknown to Mr. Arthur.

33.    The Wig and Hair Samples from Judy Wicker's 1981 Buick Riviera. The State submitted a wig and hair samples that were removed from Judy Wicker's 1981 Buick Riviera to criminologist John Kilbourn for microanalysis. Her automobile was abandoned in the parking lot of Northwest Junior College in Tuscumbia and located by the police around noon on the day of the murder. Fingerprints found in the automobile

were tested but did not match those of Mr. Arthur. At trial, Mr. Kilbourn testified that the hair samples were "Negroid hair . . . forcibly removed." Although Judy Wicker testified that Mr. Arthur had disguised himself by wearing this wig, Mr. Kilbourn did not find any hair inside the wig as would be expected. DNA tests, which could establish whether this account was indeed a fabrication, were never performed on these items. These items are in the custody of the Jefferson County Circuit Court.

34.    <u>Den Floor Vacuum Sweepings and Hair Sample</u>. Vacuum sweepings from the den floor and a hair sample from a shoe were collected from the Wicker residence and submitted to Mr. Kilbourn. These sweepings consisted of numerous hairs and fibers, none of which matched Mr. Arthur's. These items, which could reveal the presence of otherwise individuals, were never tested for DNA. Comparing the DNA test results for the hair samples with the test results for the rape kit could produce a match, thereby establishing that someone other than Mr. Arthur was present at the Wicker residence on the morning of Troy Wicker's murder. The location of the vacuum sweepings is unknown to Mr. Arthur. The hair sample is in the custody of the Jefferson County Circuit Court.

35.    In sum, DNA testing could demonstrate that the same person who raped Judy Wicker also physically assaulted her, that this person's blood was on her blouse, that his hair was found in the Wicker residence, that he was in Judy Wicker's 1981 Buick Riviera, and that this person was not Mr. Arthur. Such evidence could discredit entirely the only direct testimony linking Mr. Arthur to the murder, because nowhere in Judy Wicker's testimony did she allow for the possibility that two persons killed Troy Wicker.

36.   _Other Evidence_.  Spent cartridges, a bullet, and a pillowcase with gunpowder flakes were recovered and presented as trial exhibits.  The prosecution attempted to link the spent cartridges and bullet to Mr. Arthur through the testimony of two witnesses.  First, criminologist Brent Wheeler testified that the spent cartridges were either ".22 long or .22 long rifle," "very shiny," and coated with oil.  Second, Patricia Yarbrough Green testified that Mr. Arthur had asked her to purchase ".22 mini magnum long rifle" bullets the day before the murder.  Together, these witnesses suggested that the spent cartridges recovered from the crime scene were the same ones that allegedly had been purchased recently at Mr. Arthur's request.  But no weapon was ever found, the spent cartridges were not definitely identified, and the bullet removed from Troy Wicker's body was not specifically matched to one of the casings.  Further, although four spent cartridges were left behind, only one bullet was found and Troy Wicker suffered from only one bullet wound.  The police searched but located no other bullet holes, and there was no explanation for the presence of three extra spent cartridges without evidence of more than one gunshot.  Testing the bullet and spent cartridges could determine their exact type and condition, as well as the model of weapon that was used.  Such testing could also reveal whether any of the spent cartridges match the recovered bullet or the specific bullets that Ms. Green claimed she had obtained for Mr. Arthur.

37.    Regarding the pillowcase, criminologist Brent Wheeler testified that the sparse scattering of gunpowder residue on the pillow was not consistent with the discharge of a weapon at close range.  But this testimony directly contradicted the official autopsy report, which stated that the "gunshot wound to the right eyelid [was] fired at a close range."  (Attached as Exhibit 5)  According to Judy Wicker, her sister Teresa

Rowland gave Troy Wicker a "knock out" drug the night before and Mr. Wicker was

sleeping when he was shot. Thus, the inference to be drawn from the contradiction

between Mr. Wheeler's testimony and the autopsy report—that Troy Wicker was not in

bed when he was shot—is inconsistent with Judy Wicker's revised version of events.

The spent cartridge casings and pillowcase are in the custody of the Jefferson County

Circuit Court. The location of the bullet is unknown to Mr. Arthur.

38.    <u>Photographic Evidence</u>. Photographs of the crime scene, including those

of Troy Wicker's body, were admitted into evidence. The significant discrepancies

between witness testimony and the physical evidence—specifically as these discrepancies

relate to the four spent cartridges, the wound, the bullet, the bullet hole, and the distance

from which the gunshot was fired—cannot be adequately resolved without the crime

scene photographs. A careful examination of the photographs of the body, the wound,

and the surrounding area, in conjunction with tests of the bullet, spent cartridges, and

pillowcase, could reveal the likely type of bullet and bullet trajectories, as well as the

model of weapon used and its position at the time of discharge. Such evidence could

undermine confidence in Mr. Arthur's guilty verdict. The location of the photographs is

unknown to Mr. Arthur.

39.    Mr. Arthur is entitled to the requested evidence set forth above and in the

Forensics Memoranda. He has consistently maintained his innocence, contending that he

was not present in Judy Wicker's house when Troy Wicker was killed. In addition to

Judy Wicker's original testimony that corroborates Mr. Arthur's assertion, he has

presented testimony of two alibi witnesses. In their affidavits submitted on behalf of Mr.

Arthur, both Alphonso High and Ray Melson—independently and without

communicating with each other—provided specific, consistent details about Mr. Arthur's visit on the morning of Troy Wicker's murder. Both were confident in their recollections: Mr. Arthur stopped by Copper Mobile Homes in Decatur some time between 8 a.m. and 9 a.m.; they were on their way to Birmingham to set up a trailer; Mr. Arthur stayed for approximately 30 minutes; he acted like he always did; he was looking for work; the day after Mr. Arthur's visit they heard about Troy Wicker's murder; and when they heard that Mr. Arthur had been arrested they realized that they had seen him on the morning of the murder. The recollections of Messrs. High and Melson are significant because they directly contradict Judy Wicker's testimony that Mr. Arthur was with her that morning. Based on her testimony regarding the events immediately preceding the murder, Mr. Arthur could not have visited Messrs. High and Melson in Decatur and shot Troy Wicker in Muscle Shoals before 9:12 a.m. when the police arrived at the Wicker residence.

40.     Granting Mr. Arthur access to the requested evidence is consistent with the State of Alabama's official policy of "never oppos[ing] a post-conviction request for DNA testing if it was not available at the time of the trial, and if the request is supported by a reasonable assumption that the test could prove conclusively that the defendant is factually innocent." *See* Dana Beyerle, *Arthur Attorney Wants Evidence Tested*, TIMES DAILY (Florence, Ala), June 30, 2006 (quoting Attorney General Troy King).

41.     Moreover, under Alabama statutory law, Mr. Arthur is entitled to the trial exhibits. Citizens of Alabama have a right "to inspect and take a copy of any public writing of this state, except as otherwise expressly limited by statute." ALA. CODE § 36-12-40. The Alabama Supreme Court has defined "public writing" as having the same

meaning as the term "public record," which is defined by statute.  *Stone* v. *Consol. Pub. Co.*, 404 So. 2d 678, 680 (Ala. 1981).  The Code defines "public record" as "any paper, pleading, exhibit or other writing filed with" an Alabama court.  ALA. CODE § 41-13-1. Section 36-12-41 of the Code provides that "[e]very public officer having custody of a public writing which a citizen has a right to inspect is bound to give him, on demand, a certified copy of it," provided that the citizen making the request pays any associated fees.

## MR. ARTHUR'S EFFORTS TO OBTAIN ACCESS TO PHYSICAL EVIDENCE

42.    Mr. Arthur has diligently sought access to critical physical evidence that could wholly undermine confidence in his trial during which he was convicted and sentenced to death.  Mr. Arthur, however, has been consistently denied any opportunity to obtain this critical evidence.  In light of Mr. Arthur's ongoing efforts and the lack of access to necessary DNA technology (as described below) during the relevant period, this lawsuit is not barred by the statute of limitations.

43.    Mr. Arthur filed a motion for access to trial exhibits in the Circuit Court of Jefferson County but the state court declined to rule on the motion and instead transferred the exhibits to the federal district court, which denied Mr. Arthur's motion on April 30, 2002.

44.    On June 3, 2002, Mr. Arthur filed a Motion for Leave to Conduct Discovery limited to the threshold issue of whether the statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 should bar review of his habeas

corpus petition. On December 4, 2002, the district court denied his request and dismissed his first federal habeas petition as untimely.

45.     On December 17, 2002, Mr. Arthur filed a motion to alter or amend the judgment in the district court, which was denied on June 4, 2003.

46.     On October 6, 2003, Mr. Arthur filed his appellant's brief in the Eleventh Circuit Court of Appeals, challenging the dismissal of his habeas petition and the denial of his motion for leave to conduct discovery. The State of Alabama filed its appellee's brief on December 23, 2003, followed by Mr. Arthur's filing of his reply brief on January 23, 2004. On June 21, 2006, the Eleventh affirmed the district court's opinion in its entirety.

47.     On July 11, 2006, Mr. Arthur filed a petition for rehearing and rehearing en banc, which was denied on August 14, 2006.

48.     On January 11, 2007, Mr. Arthur filed a petition for certiorari with the United States Supreme Court, which is pending.

49.     Through counsel, Mr. Arthur also sent letters to Defendants or their predecessors in office, as well as to other potential custodians of evidence, in an effort to locate the evidence and request that it be preserved. The letters asked the recipient to search available records to confirm whether the recipient is in possession of the evidence, and if so, to preserve the evidence. More specifically:

   i.     On November 26, 2003, Mr. Arthur sent a letter to Frank Michael Hale, Sheriff, Jefferson County Sheriff's Office, Birmingham, Alabama. (Attached as Exhibit 6)

   ii.    On November 26, 2003, Mr. Arthur sent a letter to David Barber, District Attorney, Jefferson County District Attorney's Office,

Birmingham, Alabama. (Attached as Exhibit 7)

iii. On November 26, 2003, Mr. Arthur sent a letter to Dr. Robert M. Brissie, Chief Coroner/Medical Examiner, Jefferson County Coroner/Medical Examiner's Office, Birmingham, Alabama. (Attached as Exhibit 8)

iv. On November 26, 2003, Mr. Arthur sent a letter to the Birmingham City Hall, Birmingham, Alabama. (Attached as Exhibit 9)

v. On November 26, 2003, Mr. Arthur sent a letter to Sandra Turner, Circuit Clerk (Criminal Division), Jefferson County Courthouse, Birmingham, Alabama. (Attached as Exhibit 10) In a letter dated December 9, 2003, Anne-Marie Adams stated that the Jefferson County Courthouse had possession of the pillow case, hair samples, wig, clothing, and spent cartridge casings but that access to this evidence could only be obtained by filing a motion with the state court trial judge. The letter also stated that the photographic evidence had been mailed to the Alabama Supreme Court on September 14, 2000, and that the photographic evidence had not been returned. (Attached as Exhibit 11)

vi. On November 26, 2003, Mr. Arthur sent a letter to Ronnie May, Sheriff, Colbert County Sheriff's Department, Tuscumbia, Alabama. (Attached as Exhibit 12)

vii. On November 26, 2003, Mr. Arthur sent a letter to Gary Alverson, District Attorney, 31st Judicial Circuit, Colbert County, Tuscumbia, Alabama. (Attached as Exhibit 13)

viii. On November 26, 2003, Mr. Arthur sent a letter to James A. Heffernan, Colbert County Coroner, Tuscumbia, Alabama. (Attached as Exhibit 14)

ix. On November 26, 2003, Mr. Arthur sent a letter to the Tuscumbia City Hall, Tuscumbia, Alabama. (Attached as Exhibit 15) In a letter December 22, 2003, D. Marcel Black, City Attorney for the City of Muscle Shoals, Alabama, stated that the City of Muscle Shoals Police Department did not have possession of any of the evidence. Mr. Black further stated that, based on information provided to him by Lanny Coan of the Muscle Shoals Police Department and Robert Hall, formerly of that department, his understanding was that the evidence was in the custody of the Colbert County District Attorney's Office or the State of

– 17 –

Alabama Department of Forensic Sciences.  (Attached as Exhibit 16)

x.    On November 26, 2003, Mr. Arthur sent a letter to C. Phillip Bowling, Circuit Clerk and Register, Colbert County, Tuscumbia, Alabama. (Attached as Exhibit 17)

xi.    On December 2, 2003, Mr. Arthur sent a letter to F. Taylor Noggle, Jr., Director, Alabama Department of Forensic Sciences, Auburn, Alabama.  (Attached as Exhibit 18)

xii.    On December 2, 2003, Mr. Arthur sent a letter to Larry Huys, Section Chief, Alabama Department of Forensic Sciences—State DNA Data Bank, Birmingham, Alabama.  (Attached as Exhibit 19)

xiii.    On December 2, 2003, Mr. Arthur sent a letter to Rodger D. Morrison, Laboratory Director, Alabama Department of Forensic Sciences—Huntsville Laboratory, Huntsville, Alabama. (Attached as Exhibit 20)  In a letter dated May 4, 2004, Mr. Morrison responded that the Huntsville Laboratory was in possession of debris from the inside of the wig, pink blouse and beige panties; 17 sticky tape slides from the wig, blouse, panties and pants; and 74 slides containing sweepings and fibers from the wig, clothing and vacuum sweepings.  (Attached as Exhibit 21)

xiv.    On December 2, 2003, Mr. Arthur sent a letter to X. Selwyn Jones, Laboratory Director, Alabama Department of Forensic Sciences—Florence Laboratory, Florence, Alabama.  (Attached as Exhibit 22)

xv.    On December 2, 2003, Mr. Arthur sent a letter to Brent A. Wheeler, Deputy Director, Alabama Department of Forensic Sciences, Auburn, Alabama.  (Attached as Exhibit 23)

xvi.    On December 9, 2003, Mr. Arthur sent a letter to Robert G. Esdale, Clerk, Alabama Supreme Court.  (Attached as Exhibit 24)

50.    On November 26, 2003, Mr. Arthur sent a letter to J. Clayton Crenshaw, Assistant Attorney General, Capital Litigation Division, State of Alabama, Montgomery, Alabama.  Mr. Arthur requested access to the evidence for the purposes of DNA and other testing to be performed at Mr. Arthur's expense.  (Attached as Exhibit 25)

– 18 –

51.     On August 18, 2006, Mr. Arthur further attempted to access the evidence by sending a letter to Troy King, Alabama Attorney General, Alabama State House, Montgomery, Alabama.  Mr. Arthur again requested access to physical evidence for testing to be conducted at Mr. Arthur's expense.  (Attached as Exhibit 26)

52.     Mr. Arthur's most recent attempt to access the evidence occurred on January 17, 2007, when he sent a second letter to Attorney General Troy King,  renewing his request for an opportunity to test the evidence in question.  (Attached as Exhibit 27) The Attorney General's office never responded to any of Mr. Arthur's letters.

53.     Mr. Arthur believes that the present location of the hair samples, wig, clothing, and spent cartridge casings is the Jefferson County Courthouse.  The location of the other requested evidence is not known by Mr. Arthur.

### EXCULPATORY POTENTIAL OF DNA EVIDENCE

54.     The evidence that Mr. Arthur is requesting has not been subjected to Short Tandem Repeat (STR) or polymerase chain reaction (PCR) mitochondrial DNA testing or other advanced testing techniques.

55.     At the time of Mr. Arthur's trial in 1991, DNA testing technology was neither widely available nor significantly advanced.  *See FBI Announces New DNA Policy*, EXPERT & LAW, Dec. 19, 1989, at 3, 3.  The FBI did not start using PCR DNA testing until April 1992.  *See* Sandra Skowron, *New DNA Testing Provides Hope for Some Inmates*, L.A. TIMES, July 4, 1993, at A26.

56.     With the development of PCR and STR DNA testing techniques, DNA testing can now determine whether a DNA sample is consistent with the DNA profile of a particular individual with a very high degree of accuracy.  This testing can be performed

on small amounts of evidence, and it can also be performed on degraded evidence. *See* NAT'L COMM'N ON THE FUTURE OF DNA EVIDENCE, U.S. DEP'T OF JUSTICE, POSTCONVICTION DNA TESTING: RECOMMENDATIONS FOR HANDLING REQUESTS 27-28 (1999) With the development of mitochondrial DNA testing, DNA testing can be performed on shafts of hair. *Id.* at 28.

57.    STR DNA testing techniques "represent historic scientific developments" that exponentially increase the accuracy of forensic identification. *Harvey* v. *Horan*, 285 F.3d 298, 305 (4th Cir. 2002) (Luttig, J., respecting denial of rehearing en banc).

58.    Advanced DNA testing plays a critical role in strengthening the integrity of the criminal justice system. Such testing has resulted in the exoneration of a number of convicted persons. There have been 198 post-conviction DNA exonerations in United States history. *See* Innocence Project, http://www.innocenceproject.org (last visited April 6, 2007).

59.    Post-conviction exonerations based on DNA evidence have been the subject of widespread national, regional, and local media coverage, as well as the focus of the attention of federal, state, and local legislatures, courts, and executives.

60.    In March 2003, President Bush announced his Initiative to Advance Justice Through DNA Technology. The Initiative reflects the executive's understanding that "DNA technology is increasingly vital to ensuring accuracy and fairness in the criminal justice system." Fact Sheet: The President's Initiative to Advance Justice Through DNA Technology, http://www.usdoj.gov/ag/dnaoverviewinitiative21.htm (last visited April 6, 2007).

– 20 –

61.     In 2004, the United States Congress passed, and the President signed into law, the Innocence Protection Act of 2004, Pub. L. No. 108-405, tit. IV, 118 Stat. 2278 (2004).  The Act requires post-conviction DNA testing where a prisoner convicted of a federal crime swears innocence of the crime (or of a State crime that served as an aggravating factor at federal sentencing) and shows that exculpatory results would either 1) support a theory of defense that would show actual innocence; or 2) raise a reasonable probability that the prisoner did not commit the crime.  *Id.* § 3600.

### MR. ARTHUR WILL SUFFER IRREPARABLE INJURY

62.     Mr. Arthur is currently incarcerated at Holman Correctional Facility under a sentence of death.  The Defendants possess the evidence—most of which has never been tested at all—that could undermine confidence in Mr. Arthur's guilty verdict.

63.     Nevertheless, the Defendants have refused to grant Mr. Arthur access to this evidence for DNA and other testing, which Mr. Arthur has offered to conduct at no cost to the State.  In the absence of judicial intervention, Defendants have refused to provide Mr. Arthur with the evidence he has requested on multiple occasions.

64.     Mr. Arthur stands to suffer irreparable injury if the relief sought in the present complaint is denied.

### FIRST CLAIM FOR RELIEF –
### DUE PROCESS OF LAW

65.     Mr. Arthur repeats and realleges paragraphs 1 through 64 as though fully set forth herein.

66.     By refusing to search for and/or release the Requested Evidence, and thereby preventing Mr. Arthur from accessing  material and exculpatory evidence,

Defendants have deprived Mr. Arthur of procedural and substantive Due Process of Law in violation of the Fourteenth Amendment of the United States Constitution.

67.    By refusing to search for and/or release the Requested Evidence, and thereby preventing Mr. Arthur from accessing material and exculpatory evidence, Defendants have deprived Mr. Arthur of the opportunity to establish a gateway claim of actual innocence, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

**SECOND CLAIM FOR RELIEF –**
**CRUEL AND UNUSUAL PUNISHMENT**

68.    Mr. Arthur repeats and realleges paragraphs 1 through 64 as though fully set forth herein.

69.    By refusing to search for and/or release the Requested Evidence, Defendants have deprived Mr. Arthur of the opportunity to establish a claim of actual innocence prior to the imposition of a death sentence, in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment of the United States Constitution.

**THIRD CLAIM FOR RELIEF –**
**RIGHT OF ACCESS TO COURTS**

70.    Mr. Arthur repeats and realleges paragraphs 1 through 64 as though fully set forth herein.

71.    By refusing to search for and/or release the Requested Evidence, Defendants have deprived Mr. Arthur of his right of access to the courts through post-conviction proceedings, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

– 22 –

**FOURTH CLAIM FOR RELIEF – CLEMENCY**

72.     Mr. Arthur repeats and realleges paragraphs 1 through 64 as though fully set forth herein.

73.     By refusing to search for and/or release the Requested Evidence, Defendants have deprived Mr. Arthur of his right to avail himself of the opportunity to apply for executive clemency, which serves in the American criminal justice system as a safety net that prevents the violation of constitutional rights that would arise from continued incarceration and execution of an inmate who can make a showing of actual innocence, in violation of the Fourteenth Amendment of the United States Constitution.

**FIFTH CLAIM FOR RELIEF –
EQUAL PROTECTION OF THE LAWS**

74.     Mr. Arthur repeats and realleges paragraphs 1 through 64 as though fully set forth herein.

75.     By refusing to search for and/or release the Requested Evidence, Defendants have deprived Mr. Arthur of his fundamental interest in the accurate determination of his own guilt, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

WHEREFORE, Plaintiff Thomas Arthur prays for judgment as follows:

A.  Equitable relief in the form of the search for and release of the

Requested Evidence and transfer of the Requested Evidence to Mr.

Arthur's counsel for purposes of DNA and other testing; and

B.  Attorneys' fees and expenses pursuant to 42 U.S.C. § 1988(b); and

C.  Such other and further relief as this Court deems just and proper.


Respectfully submitted on this the 12th day of April, 2007

CHARLES E. VERCELLI, JR. (VER003)
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, AL  36104-5049
Telephone:   (334) 834-8805
Fax:   (334) 834-8807
e-mail: cvercelli@vercelli-law.com

*Of Counsel*:
SUHANA S. HAN
JORDAN T. RAZZA
SULTANA L. BENNETT
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588

The Clerk is requested to serve the Summonses and Complaints upon the Defendants by certified mail, return receipt requested, at the following addresses:

Troy King, Esq.
Alabama Attorney General
Alabama State House
11 South Union Street, Third Floor
Montgomery, Alabama 36130

Bryce U. Graham Jr., Esq.
District Attorney
Post Office Box 534
Tuscumbia, AL 35674

Ronnie May
Sheriff
Colbert County Sheriff's Department
201 N. Main St.
Tuscumbia, Alabama 35674

M. David Barber, Esq.
District Attorney
Tenth Judicial Circuit of Alabama
801 Richard Arrington Jr. Boulevard North
Suite L-01
Birmingham, Alabama 35203

_C E Vercelli_

CHARLES E. VERCELLI, JR. (VER003)
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, AL  36104-5049
Telephone:   (334) 834-8805
Fax:  (334) 834-8807
e-mail: cvercelli@vercelli-law.com

– 25 –

# EXHIBIT 1



# STATE OF ALABAMA
## DEPARTMENT OF FORENSIC SCIENCES

HUNTSVILLE DIVISION

P. O. BOX 125

HUNTSVILLE, ALABAMA 35804

CARLOS L. RABREN, Auburn
DIRECTOR

March 4, 1982

RE:  Case 01A-82-20615
Troy Wicker, subject
Ref: 82-15167 FL

MEMORANDUM:  To File

BY      :  John H. Kilbourn, Criminalist II

SUBJECT :  Microanalysis

February 3, 1982, this examiner received the following evidence for examination:

Item 1 – Three hair samples removed from 1981 Buick Riviera
Item 2 – One wig
Item 3 – Clothing identified as belonging to Judy Wicker
Item 4 – One hair identified as removed from house shoe
Item 5 – Six samples identified as vacuum sweepings from den floor of scene

RESULTS:

The three samples in Item 1 were each determined to be Negroid head hair.  No hair was found in Item 2.  Numerous hairs and fibers were noted on Item 3 and in the sweepings in Item 5.  These will be examined upon submission of additional known standards.  The hair in Item 4 was a fragment of a Caucasian head hair.

JHK/ms

John H Kilbourn

FORENSIC SCIENCES INVOLVE THE APPLICATION OF SCIENCE AND MEDICINE TO THE PURPOSES OF JUSTICE

# EXHIBIT 2



# STATE OF ALABAMA
## DEPARTMENT OF FORENSIC SCIENCES

CARLOS L. RABREN  AUBURN
DIRECTOR

### HUNTSVILLE DIVISION
P. O. BOX 128
HUNTSVILLE, ALABAMA 35804

March 16, 1982

                    Re:   Case 02-82-15167
                          Judy Wicker, subject
                          Ref: 82-20615 HV

MEMORANDUM:   To File

BY        :   Rodger Morrison, Criminalist

SUBJECT   :   Examination of Physical Evidence

February 3, 1982, at 1700 hours, the following evidence was received from Criminalist J.G. Wallace for analysis:

1.  One sealed MARKIT Rape Kit labeled in part with the subject's name and containing:
    a.  one red-stoppered vial of blood identified as from Judy Wicker.
    b.  fingernail scrapings.
    c.  head hair sample.
    d.  saliva sample.
    e.  pubic hair combings.
    f.  pubic hair sample.
    g.  vaginal swabs and slides.

RESULTS:

The blood sample from Judy Wicker reacted in a manner consistent with ABO group A blood.

No debris was observed in the fingernail scrapings.

The saliva sample was bloody, however, it reacted in a manner consistent with having come from a group A secretor.

No hairs were found in the pubic hair combings.

A small number of spermatozoa were identified in the vaginal swabs and slides.  A and H antigens were detected in the vaginal swab.

RDM:shs

*Rodger Morrison*

FORENSIC SCIENCES INVOLVE THE APPLICATION OF SCIENCE AND MEDICINE TO THE PURPOSES OF JUSTICE

# EXHIBIT 3



# STATE OF ALABAMA

## DEPARTMENT OF FORENSIC SCIENCES

### FLORENCE DIVISION
P. O. BOX 2234
FLORENCE, ALABAMA 35630

CARLOS L. RABREN, AUBURN
DIRECTOR

VANN V. PRUITT, JR., AUBURN
ASSISTANT DIRECTOR

JOHN H. KILBOURN, FLORENCE

LABORATORY SUPERVISOR
(205) 767-0710

April 28, 1982

Re: Case 01A-82-20615
Troy Wicker, Jr., subject
Case 02-82-15167
Judy Wicker, subject

MEMORANDUM: To File

BY      : J. G. Wallace, Criminalist

SUBJECT  : Examination of Scene

February 1, 1982, at 1015 hours, the undersigned was requested to examine a residence located at 301 Highland Avenue, Muscle Shoals, Alabama by Lieutenant Robert Hall of the Muscle Shoals Police Department.

Examination of the interior of the house revealed it to be in complete disarray. Closet, drawer and cabinet contents were on the floor.

The bed in the rear bedroom contained the body of a white male identified as Troy Wicker, Jr. The body was positioned on its back with the bed covers pulled up to chest level. Numerous black particles were noted on the bed, along with four spent cartridge casings. Numerous reddish-brown stains, appearing to be blood, were located on the wall behind the head of the body.

The den area of the house contained, along with other things, one pair of pants, one blouse and a pair of panties.

The house was examined for the presence of latent fingerprints and the following items were removed and returned to the laboratory:

1. Four spent cartridge casings removed from bed
2. One pillow and pillow case removed from under the head of the body
3. One billfold with numerous pictures and paper removed from floor in rear bedroom
4. One can of Consort hair spray removed from bathroom located off rear bedroom
5. One small wooden box from rear bedroom closet
6. One hand mirror removed from bathroom located off hall
7. One can of Style hair spray removed from bathroom located off hall
8. Three cups and ten glasses removed from floor adjacent to kitchen

Cases 01A-82-20615 - 02-82-15167 - Examination of Scene          Page 2

    9.  One cookie jar removed from kitchen
   10.  One Crisco can removed from kitchen
   11.  One peanut butter jar removed from kitchen
   12.  One popcorn jar removed from kitchen
   13.  One vase and top removed from den
   14.  Sample of carpet fibers from den floor
   15.  Clothes (pants, blouse and panties) removed from den floor
   16.  One cigarette butt from den floor
   17.  One nail clipping from den floor

The following latent print lifts of value were removed from the house or from
items removed from the house and transferred to the Identification Unit of the
Alabama Bureau of Investigation in Montgomery, Alabama.  The results of their
examination are covered in separate reports to this file.

   1.  Nine latent fingerprint lifts from a popcorn jar found in the kitchen.
       These prints are identified by ABI as Lat. #'s 1, 2, 3, 4, 11, 12, 19,
       20, 21.
   2.  One latent lift from a hand mirror found in the hall bathroom and
       identified by ABI as Lat. #5
   3.  Three latent lifts from the vase removed from den and identified by ABI
       as Lat. #'s 6, 7, 8
   4.  One latent lift from the vase top and identified by ABI as Lat. #9
   5.  One latent lift removed from the mirror in the bathroom located off the
       rear bedroom and identified by ABI as Lat. #10
   6.  Three latent lifts removed from the Style hair spray can and identified
       by ABI as Lat #'s 13, 14, 15
   7.  Three latent lifts removed from the Crisco can and identified by ABI as
       Lat. #'s 16, 17, 18
   8.  One latent lift removed from the peanut butter jar and identified by ABI
       as Lat. #22
   9.  Two latent lifts removed from cookie jar and identified by ABI as Lat.
       #'s 23, 24
  10.  One latent lift removed from hall bathroom vanity top and identified by
       ABI as Lat. #25
  11.  One latent lift removed from the top of the clothes dryer and identified
       by ABI as Lat. #27
  12.  One latent lift removed from the top of the dresser located in the rear
       bedroom and identified by ABI as Lat. #28

Examination of the Consort hair spray can, wooden box, cups and glasses re-
vealed no latent prints of value.

On the same day, Lieutenant Tom Berryman of the Muscle Shoals Police Depart-
ment submitted one rape kit bearing the name Judy Wicker.

# EXHIBIT 4



# STATE OF ALABAMA
## DEPARTMENT OF FORENSIC SCIENCES

CARLOS L. RABREN, Ausur
DIRECTOR

HUNTSVILLE DIVISION
P O. BOX 125
HUNTSVILLE, ALABAMA 35804

May 7, 1982

RE:  Case 01A-82-20615
     Troy Wicker, Jr., subject
     Judy Wicker, suspect
     Tommy Arthur, suspect
     Ref: Case 02-82-15167
     Judy Wicker, subject

MEMORANDUM:  To File

BY        :  Brent A. Wheeler, Criminalist

SUBJECT   :  Examination of Firearm Evidence

February 2, 1982, the following evidence was received from Forensic Pathologist Dr. Josefino C. Aguilar for examination:

1.  One sealed manila coin envelope labeled with the subject's name and case number and containing a .22 caliber bullet inscribed "A-50."
2.  Two similar envelopes each containing particles removed from the body.

February 3, 1982, the following evidence was delivered to the laboratory by Criminalist Gary Wallace of the Florence Laboratory:

3.  One beige with red, blue, and brown flowers "Lady Pepperell" pillowcase from a pillow at the scene.
4.  Four manila envelopes each containing a CCI .22 long or long-rifle fired cartridge case from the bed at the scene.

Examination of the bullet revealed that it was consistent with CCI "Mini-Mag" .22 long-rifle ammunition. It was fired from a weapon with six lands and grooves in a clockwise rotation. All four cartridge cases were fired in the chamber of the same weapon.

The particles from the body by Dr. Aguilar were unburned and partially burned gunpowder flakes. Similar flakes were found in the examination of the pillowcase.

"FORENSIC SCIENCES INVOLVE THE APPLICATION OF SCIENCE AND MEDICINE TO THE PURPOSES OF JUSTICE"

Case 01A-82-20615 - Examination of Firearm Evidence - Page 2

A Ruger .22 magnum single-action, six-shot revolver #20-37311 was submitted for examination, but neither the bullet nor the cartridge cases were fired by the weapon.

BAW/ms

Brent A Wheeler

# EXHIBIT 5



## STATE OF ALABAMA
### DEPARTMENT OF FORENSIC SCIENCES

HUNTSVILLE DIVISION

P. O. BOX 125

HUNTSVILLE, ALABAMA 35804

CARLOS L. RABREN, AUBURN
DIRECTOR

February 2, 1982

Re:   Case 0IA-82-20615
      Troy Wicker, subject

MEMORANDUM:   To File

BY        :   Josefino C. Aguilar, M.D., Forensic Pathologist

SUBJECT   :   Autopsy Protocol

The autopsy on the partially-clothed body of Troy Wicker, identified by
means of a post-mortem toe tag tied around the right big toe, is begun
at 10:00 a.m. the 2nd of February, 1982.

EXTERNAL EXAMINATION:

The body is that of a well-developed, well-nourished, white male measuring
75 inches in length and weighing approximately 200-210 pounds.  He appears
to be slightly older than the stated age of 35 years.

Post-mortem rigidity is barely noticed in the big joint.  Post-mortem
lividity is intense, purplish-red and located over the dorsal dependent
portion of the body except in areas exposed to pressure.  The body is
warm to touch.

The scalp hair is long, reddish-brown, and discloses marked frontal
parietal alopecia.  The left eye has a green-colored irides and ejected
conjunctiva.  The cornea and lens are transparent.  The pupil is round,
regular, centrally equal, and measures 0.4 cm.  The skeleton of the
nose is intact.  A moderate amount of bloody mucus is observed in the
nasal cavity.  A mustache is present.  The lips, oral mucosa and tongue
show no evidence of injury.  The teeth are natural and in good state
of repair.  The oral cavity contains a moderate amount of blood clots.
The ears and auditory canal are unremarkable.

The neck is symmetrical with the trachea in the midline.

The chest, back and abdomen are symmetrical.  The abdomen is flat, soft,
with no palpable mass observed.

"FORENSIC SCIENCES INVOLVE THE APPLICATION OF SCIENCE AND MEDICINE TO THE PURPOSES OF JUSTICE."

Page 2 - Case 01A-82-20615 - Autopsy Protocol

The external genitalia and anus are unremarkable. The penis is uncircumcised and the testes are within the scrotal sac.

The upper and lower extremities are symmetrical. The hands are not bagged. The fingernails are non-existent.

EVIDENCE OF INJURY:

A solitary gunshot wound of entry is observed through the right eye.

GUNSHOT WOUND OF ENTRY - RIGHT EYELID:

2-1/4 inches to the right of the midline and 2-3/4 inches below the top of the head is a half-moon-shaped 5/8 inch laceration involving the outer quarter of the edge of the right eyelid. A 4 by 4 inches zone of gunpowder tattooing is observed surrounding the skin around the entrance site which involves the skin immediately above the right eyebrow, the glabella, the right eyelid, the bridge and right half of the nose, the right cheek bordered posteriorly by a vertical line drawn down the outer extremity of the right eyebrow and inferiorly by the right naso-labial fold and also the skin of the left eyelid.

PATH OF THE GUNSHOT WOUND:

The bullet completely destroyed the right orbit. A perforating comminuted fracture of the roof of the right orbital fossae is observed. The lesser wing of the right sphenoid bone is completely destroyed. An entrance wound through the dura matter covering the anterior pole of the right temporal lobe is observed. A gunshot wound track through the right temporal lobe is observed which terminates at the junction of the middle and posterior third of the right middle temporal lobe. A depressed fracture of the right asterion, together with a perforating laceration of the overlying dura matter, is noted. The surface of the depressed inner table of the asterion has a metallic gray stain. A lacerating wound is observed involving the superior margin of the right cerebellum and also perforating and lacerating the occipital lobe posterior to the right calcarine sulcus. The brain stem is severed at the ponto-midbrain junction. A gunshot wound track is found within the substance of the left occipital lobe which terminates just anterior to the left calcarine sulcus. A perforating fracture of the left occipital lobe is found just below the left lambdoid suture.

SITE OF BULLET RECOVERY:

A side-to-side, flattened, copper-coated, small caliber bullet is recovered with gloved fingers mixed with the comminuted external table of the left occipital bone 2 inches below the top of the head and 2 inches to the left of the midline. The one side of the bullet shows evidence of rifling. The bullet is labeled "A-50" along the base and also on the deformed side of the bullet.

Page 3 – Case 0lA–82–20615 – Autopsy Protocol

INJURIES ASSOCIATED WITH THE GUNSHOT WOUND OF THE RIGHT EYELID:

Comminuted fracture of the lesser sphenoid wing, as well as the left orbital plate, is observed. There is left retrobulbar hemorrhage. A fracture line is found completely dissociating the right squamous portion of the temporal bone. Also observed are fracture lines coursing through the asterion, right inferior occipital fossae, right margin of the foramen magnum, and right superior occipital fossae. The lambda is complete avulsed. There is hemorrhage inside the ventricles. Cerebral contusions and fracture lacerations of the cortex involving the left orbital gyrus and right middle superior and inferior temporal gyri. The corpus callosum is bisected sagitally. The olfactory bulbs are gone. The optic chiasm is lacerated. Focal subarachnoid hemorrhage is observed over the dorsal surface of the right cerebellum and right half of the cerebral hemisphere.

PRIMARY INCISION:

The usual Y-shaped incision is made to expose the major body cavities. The subcutaneous fat measures 2.8 cm. in thickness at midpoint between the xiphoid and umbilicus.

INTERNAL EXAMINATION: There is no free fluid in either pleural cavity. Focal pleural adhesions are observed between the pericardium and pleura and between the diaphragm and the base of the lungs. The thoracic viscera have their normal anatomic locations and relationships.

The pericardial sac contains an estimated 10–15 ml. clear yellow fluid. The pericardium is smooth and glistening. There are no adhesions. The great vessels enter and exit the chambers of the heart in their normal anatomic locations.

The aorta follows its usual anatomical course and on section reveals a moderate amount of atheromatous plaques below the renal artery origin.

There is no free fluid in the peritoneal cavity. The peritoneum is smooth and glistening. The abdominal viscera have their normal anatomic locations and relationships.

After removal of the organs from the body, inspection of the body cavities reveals no evidence of fracture of the ribs, sternum, manubrium, clavicles, vertebral column, or pelvic bones.

GROSS EXAMINATION OF ORGANS:

ORGANS OF THE NECK: The organs of the neck are exposed. There is no hemorrhage within the soft tissues. The thyroid gland is grossly un-remarkable and on cut section presents no gross abnormalities. The hyoid bone and laryngeal cartilages are not fractured. No obstructions of the upper respiratory tract are found. The mucosa of the larynx and trachea is smooth and glistening and covered by blood-tinged fluid.

No fractures or dislocations of the cervical vertebrae are found.

Page 4 - Case OIA-82-20615 - Autopsy Protocol

HEART: The weight of the heart is 450 gm. The organ has its normal anatomic shape. The epicardium is smooth and glistening. The coronary vasculature has its normal anatomic distribution and on multiple cross section reveals up to 65% obliteration focally of the left anterior descending branch and up to 30% obliteration of the right main coronary artery by atheromatous plaques. No thrombi or occlusions are found. No significant abnormalities are found within the cardiac valves. There are no interatrial or interventricular septal defects. The myocardium is reddish-brown and firm. The average thickness of the left ventricular wall is 1.6 cm., the interventricular septum is 0.5 cm., and the right ventricular wall is 0.3 to 0.4 cm. No gross evidence of recent or remote myocardial infarct is found.

LUNGS: The weight of the right lung is 990 gm., and the left lung is 900 gm. The lungs have their normal anatomic shape and lobation. The pleura shows focal adhesion with the diaphragm and the pericardium. The lungs are boggy to palpation. On cut section, the parenchyma partially bulges and reveals a moderately moist, plum-red cut surface. No obstructions of the respiratory tract are found and the mucosa is smooth and glistening. No thrombi or emboli are found within the pulmonary vasculature.

LIVER: The weight of the liver is 1910 gm. The organ has its normal anatomic shape. The capsule is smooth and glistening. On cut section, the parenchyma is reddish-brown and has a lobular architecture. There is no increase in consistency. No traumatic lesions are found.

GALLBLADDER AND BILE DUCTS: The gallbladder contains 21 ml. of green viscid bile. The mucosa presents no abnormalities. The bile ducts are not obstructed.

SPLEEN: The weight of the spleen is 245 gm. The organ has its normal anatomic shape and the capsule is smooth and glistening. On cut section, the parenchyma is reddish-purple and presents no significant abnormalities.

PANCREAS: The weight of the pancreas is 150 gm. The organ has its normal anatomic shape. On cut section, it is composed of tan lobular parenchyma.

ADRENAL GLANDS: The combined weight of the adrenal glands is 12 gm. They have their normal anatomic shape and on cut section, the cortex is bright yellow and the medullary tissue is grayish-brown.

GASTROINTESTINAL TRACT: No mucosal lesions are found within the gastrointestinal tract. The stomach contains 10 ml. of yellow fluid and a solitary corn kernal. Brown fecal material is found within the colon. The appendix is present.

GENITOURINARY TRACT: The weight of the right kidney is 190 gm., and the left kidney is 200 gm. They have their normal anatomic shape. The capsules strip with ease and the underlying surface is smooth. On cut section the parenchyma is reddish-brown and presents a normal architecture. No

Page 5 - Case 0lA-82-20615 - Autopsy Protocol

abnormalities are found in the calyces, pelves, or ureters. The urinary bladder contains 285 ml. of yellow-orange, extremely turbid urine.

CENTRAL NERVOUS SYSTEM: The injury to the scalp, skull and brain has been described. There is no epidural or subarachnoid hemorrhage. The weight of the unfixed brain is 1650 gm. The leptomeninges are smooth and glistening. The cerebral vasculature discloses massive destruction along the base to the point that the only remaining intact vessel is that of the basilar artery. On multiple coronal section, no other abnormalities are found in either the brain or brain stem aside from the injury already described.

OTHER SIGNIFICANT FINDINGS:

A large deposit of black, unburned gunpowder is observed bounded superiorly by the Adam's Apple, inferiorly by the inferior mammillary line, and laterally by the anterior aspect of the arms deltoid region. The spread of the gunpowder is 9-1/2 inches vertically and 15-1/4 inches horizontally. The center of the gunpowder distribution is located 14-1/4 inches below the top of the head and 11-1/2 inches from the gunshot wound of entry of the right eyelid.

COLLECTION OF SPECIMENS FOR TOXICOLOGY:

Blood, urine, bile, stomach contents, pieces of lung, liver and kidneys are submitted.

COLLECTION OF EVIDENCE:

Head hair, particles of gunpowder taken from the skin surrounding the entrance wound and particles of gunpowder over the anterior chest wall are submitted. Also submitted is the properly labeled bullet recovered inside the skull.

GROSS ANATOMIC DIAGNOSES:

1. Solitary gunshot wound of the right eye:
    a. gunshot wound of entry - right eyelid.
    b. gunshot wound track - right upper eyelid - margin, right eyeball, roof of the right orbit, dura matter, temporal lobe - brain, right asterion, right occipital lobe and right superior surface - cerebellum, ponto-midbrain junction, left occipital lobe, left parietal lobe, dura matter and left occipital bone.
    c. gunpowder tattooing - right half of the face.
    d. multiple cranial fractures associated with fracture laceration and contusion of the cerebrum.
    e. heavy deposition of gunpowder - upper half - anterior chest.
    f. retrobulbar hemorrhage - left, hemorrhage inside the nose and oral cavity.
    g. massive congestion of internal viscera.

Page 6 - Case 0lA-82-20615 - Autopsy Protocol

OPINION:

Based on the findings at the time of autopsy and the history received
from Mr. Jessie York, Coroner of Colbert County, the immediate cause
of death of Mr. Troy Wicker is a gunshot wound to the right eyelid
and the manner of death is deemed as homicide.

The gunshot wound to the right eyelid is fired at a close range and is
directed from front to back with a richochet from right to left after
striking the inner table of the right asterion.

JCA:shs



# STATE OF ALABAMA
## DEPARTMENT OF FORENSIC SCIENCES

CARLOS L. RABREN  AUBURN
DIRECTOR

### BIRMINGHAM DIVISION
#### 1001 SOUTH 19TH STREET
#### BIRMINGHAM, ALABAMA 35205

REPORT OF TOXICOLOGICAL SCREENS

| 82- 20615 | TROY WICKER | 12 FEB 82 |
|---|---|---|
| DFS Case Number | Name of Subject or Suspect | Date Received |
| J. C. Aquilar, M.D. | Department of Forensic Sciences | 17 FEB 82 |
| Requested By | Agency | Date Reported |

Specimens Submitted: _____ Blood    Vitreous Humor    Urine

RESULTS

| Blood | Neg. | Pos. | NA* | Vitreous Humor | Neg. | Pos. | NA* |
|---|---|---|---|---|---|---|---|
| Ethanol | ✓ | | | | ✓ | | |
| Carbon Monoxide | | | ✓ | | | | |
| Urine I | Neg. | Pos. | NA* | Urine III | None Detected | | NA* |
| Ethanol | | | | Amphetamines | | | |
| Urine II | None Detected | | NA* | Barbiturates | | | |
| Acetaminophen | | | | Benzodiazepines | | | |
| Amitriptyline/PCP | | | | Cocaine Metabolite | | | |
| Ethchlorvynol | | | | Opiates | | | |
| Imipramine/ Desipramine | | | | Phencyclidine (PCP) | | | |
| Phenothiazines | | | | Propoxyphene | | | |
| Salicylates | | | | | | | |
| Other | | | | | | | |

ANALYSES FAILED TO DETECT ETHANOL IN GASTRIC CONTENTS.

*NA:  No Analysis Performed
#QNS:  Quantity not sufficient

If no further analyses are requested within five (5) working days and if no
additional analyses are being performed, this will constitute our official toxi-
cology report.  Additional analyses are are not being performed.

James M. Buttram, Ph.D., Toxicologist

"FORENSIC SCIENCES INVOLVE THE APPLICATION OF SCIENCE AND MEDICINE TO THE PURPOSES OF JUSTICE."

# EXHIBIT 6

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

November 26, 2003

<u>Via Federal Express</u>

Frank Michael Hale, Sheriff
Jefferson County Sheriff's Office
Birmingham Headquarters
2200 Eighth Avenue North
Birmingham, AL 35202

      Re:    <u>Thomas D. Arthur (CC 87-577)</u>

Dear Sheriff Hale:

      I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

      Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1.   One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.   Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.   One wig removed from Judy Wicker's 1981 Buick Riviera.

4.   Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5.   Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

## Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence rooms, and I conclude that we have in our possession some or all of the items you are seeking. I have circled the numbers of the items in our custody. I further promise to take all steps necessary to preserve this evidence.

_____

(Signature/date)

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence rooms, and conclude that _____ (insert office) does not have custody of any of the evidence you seek.

_____

(Signature/date)

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph F. Facciponti

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

# EXHIBIT 7

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

November 26, 2003

Via Federal Express

David Barber, District Attorney
Jefferson County District Attorney's Office
Birmingham Division
801 Richard Arrington Jr. Blvd. North
Room L-01
Birmingham, AL 35201

Re:    Thomas D. Arthur (CC 87-577)

Dear Mr. Barber:

I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and I conclude that we have in our possession some or all of the items you are
seeking. I have circled the numbers of the items in our custody. I further promise to take
all steps necessary to preserve this evidence.

_____

(Signature/date)

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy
   Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's
   house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where
   Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and conclude that _____ (insert office) does not have
custody of any of the evidence you seek.

_____

(Signature/date)

# EXHIBIT 8

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

November 26, 2003

<u>Via Federal Express</u>

Dr. Robert M. Brissie, M.D.
Chief Coroner/Medical Examiner
Jefferson County Coroner/Medical Examiner's Office
Cooper Green Hospital
1515 Sixth Avenue South
Room 205
Birmingham, AL  35233

Re:    <u>Thomas D. Arthur (CC 87-577)</u>

Dear Dr. Brissie:

   I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison.  Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker.  We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence.  We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

   Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1.  One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.  Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.  One wig removed from Judy Wicker's 1981 Buick Riviera.

4.  Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

-2-

5.  Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

6.  Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7.  One pillow and pillow case from under the head of Troy Wicker's body.

8.  The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph F. Facciponti

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and I conclude that we have in our possession some or all of the items you are
seeking. I have circled the numbers of the items in our custody. I further promise to take
all steps necessary to preserve this evidence.


_____

(Signature/date)


1.  One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.  Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.  One wig removed from Judy Wicker's 1981 Buick Riviera.

4.  Clothing identified as belonging to Judy Wicker found on the den floor of Judy
    Wicker's house.

5.  Six samples identified as vacuum sweepings from the den floor of Judy Wicker's
    house.

6.  Four spent cartridge casings found near the bed in Judy Wicker's house where
    Troy Wicker's body was found, as well as the bullet.

7.  One pillow and pillow case from under the head of Troy Wicker's body.

8.  The photographs taken at the crime scene.


I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and conclude that _____ (insert office) does not have
custody of any of the evidence you seek.


_____

(Signature/date)

# EXHIBIT 9

125 Broad Street
New York, N.Y. 10004-2498

November 26, 2003

<u>Via Federal Express</u>

City Hall (Birmingham)
710 20th Street North
Birmingham, AL 35203

       Re:   <u>Thomas D. Arthur (CC 87-577)</u>

To Whom it may concern:

       I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

       Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and I conclude that we have in our possession some or all of the items you are
seeking. I have circled the numbers of the items in our custody. I further promise to take
all steps necessary to preserve this evidence.

_____

(Signature/date)

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and conclude that _____ (insert office) does not have
custody of any of the evidence you seek.

_____

(Signature/date)

# EXHIBIT 10

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

November 26, 2003

Via Federal Express

Sandra Turner, Circuit Clerk (Criminal Division)
Jefferson County Courthouse
801 Richard Arrington, Jr. Blvd. North
Birmingham, AL 35203

Re:    Thomas D. Arthur (CC 87-577)

Dear Ms. Turner:

I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1.   One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.   Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.   One wig removed from Judy Wicker's 1981 Buick Riviera.

4.   Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5.   Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

Affirmation

I, _____, of the _____ (insert office or agency) have diligently searched through the files, records, and evidence rooms, and I conclude that we have in our possession some or all of the items you are seeking. I have circled the numbers of the items in our custody. I further promise to take all steps necessary to preserve this evidence.

_____

(Signature/date)

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

I, _____, of the _____ (insert office or agency) have diligently searched through the files, records, and evidence rooms, and conclude that _____ (insert office) does not have custody of any of the evidence you seek.

_____

(Signature/date)

# EXHIBIT 11

ACR474                ALABAMA JUDICIAL INFORMATION SYSTEM
                * * * IN THE CIRCUIT COURT   OF JEFFERSON COUNTY * * *


        THE STATE OF ALABAMA   VS.  ARTHUR THOMAS DOUGLAS



            JOSEPH P FACCIPONTI              CASE NUMBER: CC 1987 000577.00
            125 BROAD STREET
            NEW YORK NY 10004 2498           PARTY NUMBER:



        DEAR MR FACCIPONTI

        ALL OF THE PHOTOS IN THIS CASE WAS MAILED TO THE SUPREME COURT OF AL
        ON 9-14-2000 AND HAVE NOT BEEN RETURNED TO OUR OFFICE

        THERE WAS NOT A RAPE KIT TURNED INTO OUR OFFICE
        THERE WAS NOT ANY VACUUM SWEEPINGS TURNED INTO OUR OFFICE
        WE ONLY RECEIVED THE PILLOW CASE EXHIBIT #20 THE PILLOW WAS NOT
        TURNED INTO OUR OFFICE
        WE DO HAVE HAIR SAMPLES, WIG, CLOTHING, SPENT CARTRIDGE CASINGS
        IN OUR POSSESSION


        NOTICE ISSUED ON: 12/09/2003            CLERK: ANNE-MARIE ADAMS

        (12/09/2003)   CLB

ACR474                 ALABAMA JUDICIAL INFORMATION SYSTEM
                * * * IN THE CIRCUIT COURT   OF JEFFERSON COUNTY * * *


THE STATE OF ALABAMA   VS.  ARTHUR THOMAS DOUGLAS


        JOSEPH P FACCIPONTI              CASE NUMBER: CC 1987 000577.00
        125 BROAD STREET
        NEW YORK NY 10004 2498           PARTY NUMBER:


DEAR MR FACCIPONTI

IF YOU NEED TO VIEW THIS EVIDENCE YOU WILL NEED TO FILE A MOTION
WITH JUDGE HARD
IF THE JUDGE GRANTS YOUR MOTION THEN OUR OFFICE CAN PERMIT YOU TO
VIEW THE EVIDENCE


NOTICE ISSUED ON: 12/09/2003               CLERK: ANNE-MARIE ADAMS

(12/09/2003)   CLB

# EXHIBIT 12

125 Broad Street
New York, N.Y. 10004-2498

November 26, 2003

<u>Via Federal Express</u>

Ronnie May, Sheriff
Colbert County Sheriff's Department
201 North Main Street
Tuscumbia, AL 35674

Re:    <u>Thomas D. Arthur (CC 87-577)</u>

Dear Sheriff May:

I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1.  One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.  Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.  One wig removed from Judy Wicker's 1981 Buick Riviera.

4.  Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5.  Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence rooms, and I conclude that we have in our possession some or all of the items you are seeking. I have circled the numbers of the items in our custody. I further promise to take all steps necessary to preserve this evidence.

_____

(Signature/date)

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence rooms, and conclude that _____ (insert office) does not have custody of any of the evidence you seek.

_____

(Signature/date)

# EXHIBIT 13

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

November 26, 2003

<u>Via Federal Express</u>

Gary Alverson, District Attorney
31st Judicial Circuit
Colbert County, Alabama
P.O. Box 534
Tuscumbia, AL  35674

     Re:    <u>Thomas D. Arthur (CC 87-577)</u>

Dear Mr. Alverson:

        I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison.  Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker.  We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence.  We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

        Accordingly, I wish to locate this evidence and to ensure its preservation.  I ask that you review the list below to determine whether the evidence described therein is in your custody.

1.  One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.  Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.  One wig removed from Judy Wicker's 1981 Buick Riviera.

4.  Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5.  Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

## Affirmation

I, _____, of the _____ (insert office or agency) have diligently searched through the files, records, and evidence rooms, and I conclude that we have in our possession some or all of the items you are seeking. I have circled the numbers of the items in our custody. I further promise to take all steps necessary to preserve this evidence.

_____

**(Signature/date)**

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

I, _____, of the _____ (insert office or agency) have diligently searched through the files, records, and evidence rooms, and conclude that _____ (insert office) does not have custody of any of the evidence you seek.

_____

**(Signature/date)**

# EXHIBIT 14

125 Broad Street
New York, N.Y. 10004-2498

November 26, 2003

<u>Via Federal Express</u>

James A. Heffernan
Colbert County Coroner
P.O. Box 967
Tuscumbia, AL 35674

Re:    <u>Thomas D. Arthur (CC 87-577)</u>

Dear Mr. Heffernan:

I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1.  One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.  Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.  One wig removed from Judy Wicker's 1981 Buick Riviera.

4.  Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5.  Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

cc: J. Clayton Crenshaw, Esq.
Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and I conclude that we have in our possession some or all of the items you are
seeking. I have circled the numbers of the items in our custody. I further promise to take
all steps necessary to preserve this evidence.


_____

(Signature/date)


1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy
   Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's
   house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where
   Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.


I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and conclude that _____ (insert office) does not have
custody of any of the evidence you seek.


_____

(Signature/date)

# EXHIBIT 15

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

November 26, 2003

Via Federal Express

City Hall (Tuscumbia)
202 East Sixth Street
Tuscumbia, AL 35674

Re:    Thomas D. Arthur (CC 87-577)

To Whom It May Concern:

I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1.  One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.  Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.  One wig removed from Judy Wicker's 1981 Buick Riviera.

4.  Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5.  Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and I conclude that we have in our possession some or all of the items you are
seeking. I have circled the numbers of the items in our custody. I further promise to take
all steps necessary to preserve this evidence.


_____

(Signature/date)


1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy
   Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's
   house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where
   Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.


I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and conclude that _____ (insert office) does not have
custody of any of the evidence you seek.


_____

(Signature/date)

# EXHIBIT 16

Law Offices
of
# BLACK & HUGHSTON, P.C.

210 NORTH MAIN STREET
TUSCUMBIA, ALABAMA 35674

Telephone (256) 383-2435
Facsimile (256) 383-6502

Harold V. Hughston (1981)
D. Marcel Black
James D. Hughston

Reply to:
P.O. Box 839
Tuscumbia, AL 35674

December 22, 2003

Joseph P. Facciponti, Esq.
Sullivan & Cromwell, LLP
125 Broad Street
New York, NY 10004-2498

RE: Thomas D. Arthur (CC-87-577)

Dear Mr. Facciponti:

Your letter dated November 26, 2003 has been delivered to me for response. My response is made in my capacity as City Attorney for the City of Muscle Shoals, Alabama. Although your letter was addressed to City Hall (Tuscumbia) it was forwarded to the Office of Detectives at the Muscle Shoals Police Department (I assume by the City of Tuscumbia and for the reason that the offense for which Mr. Arthur was convicted occurred in the City of Muscle Shoals). In any event, I am informed that the City of Muscle Shoals Police Department retains none of the items of evidence mentioned in the attachment to your letter or any other evidence related to the captioned matter. It is my understanding, based upon information provided to me by Mr. Lanny Coan of the department and Mr. Robert Hall, formerly with the department, that the items of evidence sought by you would be in the custody of the Colbert County District Attorney's Office or the State of Alabama Department of Forensic Sciences.

The addresses and telephone numbers of the two agencies are as follows:

~~Mr. Gary W. Alverson~~
Office of the District Attorney
Colbert County Courthouse
Tuscumbia, AL 35674
(256) 386-8520

ιti, Esq.
3

Jones, Director
t of Forensic Sciences
ivision
Wood Avenue
.L 35630
)710

foggle, Director
t of Forensic Sciences
g Laboratories
.oad
510
_ 36831-3510

:his information satisfies your request.

Yours truly,

D. Marcel Black
City Attorney
City of Muscle Shoals, Alabama

# EXHIBIT 17

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

November 26, 2003

<u>Via Federal Express</u>

C. Phillip Bowling
Circuit Clerk and Register
Colbert County
201 North Main Street
Tuscumbia, AL  35674

Re:    <u>Thomas D. Arthur (CC 87-577)</u>

Dear Mr. Bowling:

I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison.  Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker.  We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence.  We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1.  One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.  Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.  One wig removed from Judy Wicker's 1981 Buick Riviera.

4.  Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5.  Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and I conclude that we have in our possession some or all of the items you are
seeking. I have circled the numbers of the items in our custody. I further promise to take
all steps necessary to preserve this evidence.

_____

(Signature/date)

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy
   Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's
   house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where
   Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and conclude that _____ (insert office) does not have
custody of any of the evidence you seek.

_____

(Signature/date)

# EXHIBIT 18

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

December 2, 2003

Via Federal Express

Mr. F. Taylor Noggle, Jr.
Director
Alabama Department of Forensic Sciences
C.J. Rehling Laboratories
991 Wire Road
P.O. Box 3510
Auburn, AL 36831-3510

Re:    Thomas D. Arthur (CC 87-577)

Dear Mr. Taylor:

I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1.  One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.  Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.  One wig removed from Judy Wicker's 1981 Buick Riviera.

4.  Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

(Enclosure)

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and I conclude that we have in our possession some or all of the items you are
seeking. I have circled the numbers of the items in our custody. I further promise to take
all steps necessary to preserve this evidence.

_____

(Signature/date)

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy
Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's
house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where
Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and conclude that _____ (insert office) does not have
custody of any of the evidence you seek.

_____

(Signature/date)

# EXHIBIT 19

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

December 2, 2003

<u>Via Federal Express</u>

Mr. Larry Huys
Section Chief
Alabama Department of Forensic Sciences – State DNA Data Bank
501 12ᵗʰ Street South
Birmingham, AL 35233

Re:    <u>Thomas D. Arthur (CC 87-577)</u>

Dear Mr. Huys:

I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1.  One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.  Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.  One wig removed from Judy Wicker's 1981 Buick Riviera.

4.  Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5.  Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence rooms, and I conclude that we have in our possession some or all of the items you are seeking. I have circled the numbers of the items in our custody. I further promise to take all steps necessary to preserve this evidence.

_____

(Signature/date)

1.  One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.  Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.  One wig removed from Judy Wicker's 1981 Buick Riviera.

4.  Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5.  Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

6.  Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7.  One pillow and pillow case from under the head of Troy Wicker's body.

8.  The photographs taken at the crime scene.

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence rooms, and conclude that _____ (insert office) does not have custody of any of the evidence you seek.

_____

(Signature/date)

# EXHIBIT 20

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

December 2, 2003

<u>Via Federal Express</u>

Mr. Rodger D. Morrison
Laboratory Director
Alabama Department of Forensic Sciences – Huntsville Laboratory
716 Arcadia Circle
Huntsville, AL 35801-5908

Re:     <u>Thomas D. Arthur (CC 87-577)</u>

Dear Mr. Morrison:

I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1.    One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.    Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.    One wig removed from Judy Wicker's 1981 Buick Riviera.

4.    Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5.    Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

(Enclosure)

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence rooms, and I conclude that we have in our possession some or all of the items you are seeking. I have circled the numbers of the items in our custody. I further promise to take all steps necessary to preserve this evidence.

_____

(Signature/date)

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence rooms, and conclude that _____ (insert office) does not have custody of any of the evidence you seek.

_____

(Signature/date)

# EXHIBIT 21



**ALABAMA**
**DEPARTMENT OF FORENSIC SCIENCES**

716 ARCADIA CIRCLE
HUNTSVILLE, ALABAMA 35801
(256) 539-1401
FACSIMILE (256) 533-2855

May 4, 2004

Joseph P. Facciponti
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498

Re:  Thomas D. Arthur (CC 87-577)

Dear Mr. Facciponti:

I have reviewed the files (ADFS 01A-82-20615 and 02-82-15167)
on Troy Wicker, Jr. and Judy (Mary Jewel) Wicker.  A search
of the evidence vault reveals the following items of evidence
are currently being held at the Huntsville Laboratory:

1.  Three small cardboard pill boxes identified as
    containing debris from inside wig, pink blouse
    and beige panties.

2.  Seventeen sticky tape slides identified as from
    wig, panties, blouse and pants.

3.  Seventy-four microscope slides identified as
    containing hairs/fibers from wig, clothing and
    vacuum sweepings.

If I may be of any further service, please do not hesitate
to contact me.

Sincerely,

Rodger Morrison
Laboratory Director

RM:yt

# EXHIBIT 22

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

December 2, 2003

<u>Via Federal Express</u>

Mr. X. Selwyn Jones
Laboratory Director
Alabama Department of Forensic Sciences – Florence Laboratory
643 North Wood Ave.
Florence, AL 35630

Re:    <u>Thomas D. Arthur (CC 87-577)</u>

Dear Mr. Jones:

I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

(Enclosure)

cc:   J. Clayton Crenshaw, Esq.
      Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and I conclude that we have in our possession some or all of the items you are
seeking. I have circled the numbers of the items in our custody. I further promise to take
all steps necessary to preserve this evidence.

_____

(Signature/date)

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy
   Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's
   house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where
   Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and conclude that _____ (insert office) does not have
custody of any of the evidence you seek.

_____

(Signature/date)

# EXHIBIT 23

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

December 2, 2003

<u>Via Federal Express</u>

Brent A. Wheeler
Deputy Director
Alabama Department of Forensic Sciences
C.J. Rehling Laboratories
991 Wire Road
Auburn, AL 36831-3510

Re:    <u>Thomas D. Arthur (CC 87-577)</u>

Dear Mr. Wheeler:

I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1.  One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.  Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.  One wig removed from Judy Wicker's 1981 Buick Riviera.

4.  Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5.  Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

Please respond by December 12, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

Sincerely,

Joseph P. Facciponti

(Enclosure)

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and I conclude that we have in our possession some or all of the items you are
seeking.  I have circled the numbers of the items in our custody.  I further promise to take
all steps necessary to preserve this evidence.


_____

(Signature/date)


1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.


I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and conclude that _____ (insert office) does not have
custody of any of the evidence you seek.


_____

(Signature/date)

# EXHIBIT 24

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

December 9, 2003

<u>Via Federal Express</u>

Robert G. Esdale, Clerk
Alabama Supreme Court
300 Dexter Avenue
Montgomery, AL 36104

   Re: <u>Thomas D. Arthur (CC 87-577)</u>

Dear Mr. Esdale:

   I write on behalf of Thomas D. Arthur, an inmate currently on death row at Holman Prison. Mr. Arthur was convicted of capital murder in 1991 in the Tenth Judicial Circuit Court in Jefferson County (CC 87-577) for the February 1, 1982 murder of Troy Wicker. We believe Mr. Arthur was wrongfully convicted and we are working to establish his innocence. We have asked the Alabama Attorney General to grant us access to test the relevant and available physical evidence.

   Accordingly, I wish to locate this evidence and to ensure its preservation. I ask that you review the list below to determine whether the evidence described therein is in your custody.

1. One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2. Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3. One wig removed from Judy Wicker's 1981 Buick Riviera.

4. Clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house.

5. Six samples identified as vacuum sweepings from the den floor of Judy Wicker's house.

-2-

6. Four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet.

7. One pillow and pillow case from under the head of Troy Wicker's body.

8. The photographs taken at the crime scene.

    If you determine that you have custody of some or all of this evidence, please list the evidence in your possession and sign the attached form. I also ask that you take all steps necessary to preserve the evidence. If you determine that these items are not in your custody, please check the "no evidence" box on the attached form and return it to us in the self-addressed stamped envelope that I have provided. For your assistance, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

    Please respond by December 17, 2003. If you have any questions, please call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588. Thank you in advance for your prompt cooperation.

                                        Sincerely,

                                        Joseph P. Facciponti

(Enclosure)

cc:    J. Clayton Crenshaw, Esq.
       Assistant Attorney General

Affirmation

I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and I conclude that we have in our possession some or all of the items you are
seeking. I have circled the numbers of the items in our custody. I further promise to take
all steps necessary to preserve this evidence.

_____

(Signature/date)


1.  One rape kit for Mary Jewel, a.k.a. Judy Wicker ("Judy Wicker").

2.  Hair samples removed from Judy Wicker's 1981 Buick Riviera.

3.  One wig removed from Judy Wicker's 1981 Buick Riviera.

4.  Clothing identified as belonging to Judy Wicker found on the den floor of Judy
    Wicker's house.

5.  Six samples identified as vacuum sweepings from the den floor of Judy Wicker's
    house.

6.  Four spent cartridge casings found near the bed in Judy Wicker's house where
    Troy Wicker's body was found, as well as the bullet.

7.  One pillow and pillow case from under the head of Troy Wicker's body.

8.  The photographs taken at the crime scene.


I, _____, of the _____
(insert office or agency) have diligently searched through the files, records, and evidence
rooms, and conclude that _____ (insert office) does not have
custody of any of the evidence you seek.

_____

(Signature/date)

# EXHIBIT 25

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

November 26, 2003

Via Federal Express

J. Clayton Crenshaw, Esq.
Assistant Attorney General
Capital Litigation Division
Alabama State House
11 South Union Street
Montgomery, Alabama  36130-1052

Re:     Thomas D. Arthur's Requests for Evidence

Dear Mr. Crenshaw:

I write on behalf of Thomas D. Arthur, an inmate on death row at Holman Prison. As you know, Mr. Arthur was convicted of capital murder and sentenced to death in 1991 for the murder of Troy Wicker. Mr. Arthur has maintained his innocence throughout his trial and postconviction proceedings. I write to request access to evidence in the State of Alabama's custody, described below, for DNA and other testing to be performed at Mr. Arthur's expense.

Where DNA testing can establish actual innocence or be determinative of innocence, the interests of justice require that such testing be performed. *See* National Institute of Justice, Postconviction DNA Testing: Recommendations for Handling Requests, Sept. 1999, at iii, *at* http://www.ojp.usdoj.gov/nij/pubs-sum/177626.htm. There have been at least 123 postconviction DNA exonerations in the past decade, 37 of which involved homicides. *See* Innocence Project, Case Profiles, *at* http://www.innocenceproject.org/case/index.php. As in those cases, Mr. Arthur seeks to test such evidence to support his claim of innocence.

J. Clayton Crenshaw, Esq.                                                          -2-

        In Mr. Arthur's case, none of the evidence collected by the State in its investigation of Troy Wicker's murder or presented at Mr. Arthur's trials has been subjected to DNA testing and most of it has not been subjected to any other physical testing. We hereby request that your office locate and provide the following to us for testing: (i) the rape kit of Mary Jewell, a.k.a. Judy Wicker ("Judy Wicker"); (ii) hair samples removed from Judy Wicker's 1981 Buick Riviera; (iii) one wig removed from Judy Wicker's 1981 Buick Riviera; (iv) clothing identified as belonging to Judy Wicker found on the den floor of Judy Wicker's house; (v) six samples identified as vacuum sweepings from the den floor of Judy Wicker's house; (vi) four spent cartridge casings found near the bed in Judy Wicker's house where Troy Wicker's body was found, as well as the bullet; (vii) one pillow and pillow case from under the head of Troy Wicker's body; and (viii) the photographs taken at the crime scene.

        Please send these items to me at the address listed above. For your assistance in locating this evidence, I have attached a letter from the State of Alabama Department of Forensic Sciences describing this evidence.

        We ask that you respond to this letter by December 12, 2003. If you have any questions, you may call me at (212) 558-4672 or my colleague, Sean C. Duffy, at (212) 558-4913. Our fax number is (212) 558-3588.

Sincerely yours,

Joseph F. Facciponti

(Enclosure)

# EXHIBIT 26

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

August 18, 2006

By Overnight Courier

Troy King, Esq.
    Alabama Attorney General,
        Alabama State House,
            11 South Union Street, Third Floor,
                Montgomery, Alabama  36130.

Re:    Request for Post-Conviction Access to DNA Evidence

Dear Attorney General King:

I represent Thomas D. Arthur, an inmate currently on death row at Holman Correctional Facility in Atmore, Alabama.  Mr. Arthur was convicted and sentenced to death for a crime he did not commit.  We seek access to physical evidence — including a rape kit, blood-stained clothing and hair samples — that has *never* been subjected to DNA testing.  Enclosed are memoranda prepared by the State of Alabama's Department of Forensic Sciences describing the evidence collected.[1]  We request that you release all such evidence for testing purposes.  Testing would be conducted at our expense, and we are prepared to travel to Alabama to collect the evidence and pay for all related costs.

---

[1]    These include the following:  (1) Memorandum to File by John H. Kilbourn, dated March 4, 1982; (2) Memorandum to File by Rodger Morrison, dated March 16, 1982; (3) Memorandum to File by J.G. Wallace, dated April 28, 1982; and (4) Memorandum to File by Brent A. Wheeler, dated May 7, 1982.

Attorney General Troy King                                                          -2-

In 1991, Mr. Arthur was convicted of capital murder in the Tenth Judicial Circuit of Jefferson County for the murder of Troy Wicker on February 1, 1982. No physical evidence linked Mr. Arthur to the crime. Mr. Arthur's conviction and death sentence were based primarily on the testimony of a convicted murderer and admitted perjurer, the victim's wife, Judy Wicker. Although Judy Wicker had previously testified under oath that Mr. Arthur was *not* involved in her husband's murder, she changed her story and was given early parole (she was serving a life sentence for the same crime). Although Judy Wicker implicated two others in Troy Wicker's murder — her sister Theresa Rowland and her sister's boyfriend, Theron McKinney — they were never prosecuted.

At her own trial, Judy Wicker testified that a burglar had raped her and then shot her husband. Consistent with this testimony, on the day of the murder, Judy Wicker had sustained injuries and was taken to a hospital where a rape kit was prepared. The police collected physical evidence from the crime scene, including Judy Wicker's blood-stained clothing and torn underwear, hair samples, and vacuum sweepings. The police also collected physical evidence from Judy Wicker's 1981 Buick Rivera.

At Mr. Arthur's trial in 1991, Judy Wicker secured her freedom by testifying — in direct contradiction to her earlier sworn testimony — that it was Mr. Arthur who had assaulted her and killed Troy Wicker. If Judy Wicker's testimony at Mr. Arthur's trial was truthful, the rape kit, blood-stained and torn clothing, hair samples, and other physical evidence should link Mr. Arthur to the crime scene and the events leading up to Troy Wicker's murder. None of this evidence, however, has ever been subjected to DNA testing.

We believe that DNA testing could demonstrate that the same person who raped Judy Wicker also physically assaulted her, that this person's blood was on her blouse, that his hair was found in the Wicker residence, that he was in Judy Wicker's 1981 Buick Riviera, and that this person was not Mr. Arthur. Because Judy Wicker testified that she was assaulted on the morning of Troy Wicker's murder and that the killer rode in her car and destroyed things in her home that morning, and because the rape kit was prepared that morning, matching test results could also demonstrate that this person was with Judy Wicker on the morning of Troy Wicker's murder. Together, the evidence could show that someone other than Mr. Arthur murdered Troy Wicker. Indeed, such evidence could discredit entirely the only direct testimony linking Mr. Arthur to the murder, because *none* of Judy Wicker's testimony allows for the possibility that two persons killed Troy Wicker.

Attorney General Troy King                                                    -3-

       In the interests of justice and fairness, Mr. Arthur — whose trial and death sentence were *never* collaterally reviewed on the merits by any state or federal court — should be permitted to test the requested evidence at no cost to the State of Alabama. We have no doubt that the State of Alabama firmly opposes the execution of an innocent person, and we are merely asking for the opportunity to ensure that Mr. Arthur is not wrongfully executed.

       I can be reached at (212) 558-4647 if you have any questions or require additional information. I look forward to hearing from you soon.

                    Sincerely,

                    Suhana S. Han

(Enclosures)

cc: Clay Crenshaw, Esq.

# EXHIBIT 27

125 BROAD STREET
NEW YORK, N.Y. 10004-2498

January 17, 2007

By Overnight Courier

Troy King, Esq.
    Alabama Attorney General,
        Alabama State House,
            11 South Union Street, Third Floor,
                Montgomery, Alabama 36130.

        Re:    Request for Post-Conviction Access to DNA Evidence

Dear Attorney General King:

        I represent Thomas D. Arthur, an inmate currently on death row at
Holman Correctional Facility in Atmore, Alabama. In a letter dated August 18, 2006,
I requested access to physical evidence that has never been subjected to DNA testing, and
outlined the reasons why Mr. Arthur should be permitted to test such evidence at no cost
to the State of Alabama. After five months, I have not yet received a response to my
letter (which I enclose again for your convenience).

        Please advise by February 1, 2007 whether the State of Alabama will
provide Mr. Arthur with the opportunity to test the requested evidence and demonstrate
his innocence before executing him for a crime he did not commit. If I do not hear from
you by that date, I will have no choice but to deem your failure to respond as a refusal to
grant Mr. Arthur such opportunity.

Attorney General Troy King                                           -2-

       I can be reached at (212) 558-4647 if you have any questions or require additional information.

Sincerely,

Suhana S. Han

(Enclosure)

cc:  Clay Crenshaw, Esq.