IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS D. ARTHUR,                )
                                 )
        Plaintiff,               )
                                 )
v.                               ) No. 2:07-cv-319-WKW-TFM
                                 )
TROY KING, et al.,               )
                                 )
        Defendants.              )

---

**DEFENDANTS'S REPLY TO PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'S MOTION TO DISMISS**

---

Troy King
*Attorney General*

J. Clayton Crenshaw
*Assistant Attorney General*
Counsel of Record *

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7423 Office
(334) 353-3637 Fax
ccrenshaw@ago.state.al.us

July 2, 2007

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................iii

I.   THE ELEVENTH CIRCUIT RULED IN <u>GRAYSON</u> THAT
     INMATES DO NOT HAVE A SUBSTANTIVE OR
     PROCEDURAL DUE PROCESS RIGHT TO POST-
     CONVICTION DNA TESTING...............................2

     A.   <u>Grayson</u> is not distinguishable ...................2

     B.   Arthur Is Not Entitled to Testing Under
          <u>Brady v. Maryland</u> ................................7

     C.   Arthur Is Not Entitled To Testing Under
          <u>Matthews v. Eldridge</u> ............................9

II.  ARTHUR IS NOT ENTITLED TO DNA TESTING UNDER
     THE EIGHTH AMENDMENT................................13

III. ARTHUR IS NOT ENTITLED TO DNA TESTING UNDER
     THE RIGHT OF ACCESS TO COURTS.......................14

IV.  ARTHUR'S CLEMENCY CLAIM IS MERITLESS................16

V.   ARTHUR'S COMPLAINT IS BARRED BY LACHES
     PURSUANT TO THIS COURT'S DECISION IN
     <u>GRAYSON V. ALLEN</u>....................................18

     A.   Arthur Inexcusably Delayed In Filing
          His § 1983 Action ..............................19

     B.   Arthur's Inexcusable Delay In Filing
          Caused Undue Prejudice To The State ............20

          1.   Arthur's Late-Filed Claim Causes
               Prejudice Because the State Cannot
               Enforce Its Judgment If Arthur Is
               Allowed To Fully Adjudicate his
               Claim ....................................22

          2.   Prejudice Results When Courts Are
               Forced To Expedite Litigation
               Schedules Due To Late-Filed Claims .........29

VI.  CONCLUSION........................................31

CERTIFICATE OF SERVICE ..................................32

## TABLE OF AUTHORITIES

**Cases**

Alley v. Key, No. 06-5552, 2006 WL 1313364
   (6th Cir. 2006)..........................................8

Arthur v. Allen, 452 F.3d 1234 (11th Cir. 2006) ........5, 6

Arthur v. Allen, CV-07-342 ..............................29

Arthur v. State, 575 So. 2d 1165 (Ala. Crim.
   App. 1990)..............................................3

Arthur v. State, 711 So. 2d 1031 (Ala. Crim.
   App. 1996)...........................................3, 4

Arthur v. State, 820 So. 2d 886 (Ala. Crim. App.
   2001), cert. denied (Ala. 2001)........................4

Bradley v. Nagle, 2:01-cv-01601-SLB (N.D. Ala.) ......25, 27

Bradley v. Pryor, 305 F.3d 1287 (11th Cir.
   2002).......................................20, 27, 29

Brady v. Maryland, 373 U.S. 83 (1963) .................7, 8

Calderon v. Thompson, 523 U.S. 538 (1998) ........11, 12, 21

Callahan v. Allen, 2:06-cv-919-WKW .......................29

Chattanoga Manufacturing, Inc. v. Nike, Inc.,
   301 F.3d 789 (7th Cir. 2002)..........................24

Christopher v. Harbury, 536 U.S. 403 (2002) ..............15

Envornmental Defense Fund, Inc. v. Alexander,
   614 F.2d 474 (5th Cir. 1980)..........................25

Esso International, Inc. v. SS Captain John, 443
   F.2d 1144 (5th Cir. 1971).............................24

Grayson v. Allen, 07-12364-P ............................29

Grayson v. Allen, 2007 WL 1491009 (M.D. Ala. May 21, 2007)..........................................2, 18

Grayson v. King, 127 S.Ct. 1005 (Jan. 8, 2007) ...........28

Grayson v. King, 460 F.3d 1328 (11th Cir. 2006) ......passim

Grayson v. Pryor, CV-02-BE-2800-S ........................28

Hallford v. Allen, CV-07-410 .............................29

Harvey v. Horan, 278 F.3d 370 (4th Cir. 2002) .............8

Hauser v. Foley  Co., 190 Ala. 437, 67 So. 252 (Ala. 1914)..............................................21

Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992)...................................................13

Hutcherson v. Riley, 468 F.3d 750 (11th Cir. 2006).................................................20

Jones v. Allen, 485 F.3d 635 (11th Cir. 2007) .......23, 26

Knight v. Jacobson, 300 F.3d 1272 (11th Cir. 2002).................................................17

Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174 (1996)...................................................14

Matthews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893 (1976)...............................................9, 10, 11

McNair v. Allen, 2:06-cv-695-WKW ........................29

Murray v. Carrier, 477 U.S. 478 (1986) ..............11, 12

Nelson v. Campbell, 2:03-cv-1008-MHT (M.D. Ala.) ........28

Nelson v. Campbell, 541 U.S. 637, 124 S.Ct. 2117 (2004)...............................................20, 28

Ohio Adult Parole Authority v. Woodard, 523 U.S.
    272 (1998) ......................................10, 17, 18

Sandvik v. United States, 177 F.3d 1269 (11th
    Cir. 1999) .............................................19

Save Our Wetlands, Inc. v. United States Army
    Corps of Engineers, 549 F.2d 1021 (5th Cir.
    1977) .................................................25

Sawyer v. Whitley, 505 U.S. 333 (1992) ..............11, 12

Siebert v. Allen, 2:07-cv-295-MEF ......................29

Stone v. Gulf American Fire and Cas. Co., 554
    So. 2d 346 (Ala. 1989) ................................19

Williams v. Allen, 2:07-cv-307-MEF .....................29

Wilson v. State, 105 So. 2d 66 (Ala. 1958) .............17

**Statutes**

Code of Alabama
Section 12-17-184(16) ...............................17, 18

United States Code
28 U.S.C. § 2255 .......................................19
42 U.S.C. § 1983 ...................................passim

**Other Authorities**

Ala. Const. § 124 .....................................17
Am. Jur. Equity § 158 (Apr. 2007) .....................19

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS D. ARTHUR,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )  No. 2:07-cv-319-WKW
                                     )
TROY KING, et al.,                   )
                                     )
        Defendants.                  )

**DEFENDANTS'S REPLY TO PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'S MOTION TO DISMISS**

On April 13, 2007, Arthur filed a complaint pursuant to
42 U.S.C. § 1983, requesting, among other things, DNA
testing of certain items. Doc. 1, ¶ 30. The defendants
responded by filing a motion to dismiss. Doc. 8. This
Court subsequently entered an order "that plaintiff file a
response … on or before June 18, 2007," and that the
defendants may file a reply brief no later than July 2,
2007. See Doc. 9. Arthur did not demonstrate in his
responsive brief that a denial of post-conviction access to
biological evidence for the purpose of DNA testing deprived
him of a federally protected right; thus he has failed to
state a claim under § 1983.

Two significant events have occurred since defendants
filed their motion to dismiss: (1) on June 22, 2007, the

Alabama Supreme Court set Arthur's execution for September 27, 2007, see Exhibit A, and (2) this Court entered an order dismissing a § 1983 lethal-injection action on laches grounds, see Grayson v. Allen, 2:06-cv-1032-WKW, 2007 WL 1491009 (M.D. Ala. May 21, 2007). This Court should follow its decision in Grayson and dismiss Arthur's complaint on laches grounds.

**I. THE ELEVENTH CIRCUIT RULED IN <u>GRAYSON</u> THAT INMATES DO NOT HAVE A SUBSTANTIVE OR PROCEDURAL DUE PROCESS RIGHT TO POST-CONVICTION DNA TESTING**

This Court should follow Grayson v. King, 460 F.3d 1328 (11th Cir. 2006), and reject Arthur's argument that his rights to substantive due process and procedural due process have been violated.

**A. <u>Grayson</u> is not distinguishable**

As best we can tell, Arthur contends Grayson is factually distinguishable for three reasons. Doc. 12 at 8-11. First, Arthur contends that the evidence in his case was not overwhelming and that no physical evidence links him to the crime. Second, Arthur alleges that he "steadfastly maintained his innocence." Id. at 9. Third, Arthur states that favorable DNA test results would indisputably prove his innocence. Arthur has not

established that any of these factual distinctions exist. Each of these alleged factual distinctions will be addressed in turn.

As detailed in the defendants's motion to dismiss, the evidence presented against Arthur was indeed overwhelming. See Doc. 8 at 9-15. Judge Nelson's order – that dismissed Arthur's federal habeas petition – also emphasized the overwhelming evidence presented against Arthur. See Doc. 8, Ex. A at 10-12; see also Arthur v. State, 575 So. 2d 1165, 1167-70 (Ala. Crim. App. 1990)(describing in detail the evidence presented at Arthur's second trial that was substantially similar to what was presented at the third trial); Arthur v. State, 711 So. 2d 1031, 1043-45 (Ala. Crim. App. 1996)(referencing evidence from the third trial). Moreover, contrary to Arthur's assertion, there was a great deal of "direct" evidence presented. Judy Wicker testified that she paid $10,000 to Arthur to murder her husband. Doc. 8 at 9. Wicker was in the house when the murder occurred and she was physically assaulted by Arthur after he shot the victim. Id. All of her testimony concerning the murder and the surrounding circumstances was corroborated by other evidence. Doc. 8 at 11-13. Finally,

3

on the day before the murder, Arthur had an individual purchase .22 caliber mini magnum long rifle bullets, the same type of bullet that was removed from the victim's body. Id. at 10-11.

Second, contrary to Arthur's statement, he has not "steadfastly maintained his innocence." Even though Arthur represented himself at his trial, he did not present any evidence in an effort to establish his innocence. Instead, testimony was presented to explain how Arthur, who was on work release at the time, came to possess $2100. In addition, Arthur presented testimony that the individual who purchased the bullets for him was lying because she was being pressured by the police. Doc. 8 at 13-14. Furthermore, Arthur did not testify and proclaim his innocence. Arthur, 711 So. 2d at 1045. Finally, Arthur did not raise a claim of innocence in his Rule 32 petition. See Arthur v. State, 820 So. 2d 886 (Ala. Crim. App. 2001), cert. denied (Ala. 2001)(listing claims raised in Arthur's time-barred Rule 32 petition but not making reference to a claim of innocence). All of these facts refute Arthur's contention that he has "steadfastly" maintained his innocence.

4

Arthur contended, for the first time, during his federal habeas proceedings that he was factually innocent. Doc. 8 at 17-19. Arthur asserted his innocence through the affidavits of two individuals who stated that on the morning of February 1, 1982, they saw Arthur in Decatur (approximately 60 miles away from the Wicker residence) at a point in time when the murder was taking place. Arthur v. Allen, 452 F.3d 1234, 1244-45 (11th Cir. 2006); Doc. 8, Ex. A at 12-13. However, these same affiants subsequently recanted the part of their affidavits stating they saw Arthur on February 1, 1982. Arthur, 452 F.3d at 1245; Doc. 8, Ex. A at 13-14.

Arthur presented these affidavits (and his claim of factual innocence) 20 years after his first trial and 11 years after his third trial. Arthur has offered no explanation why he did not present this information sooner. His late-filed claim is even more puzzling because he supposedly had personal knowledge he was with the two affiants and thus he could have called them as witnesses. The Eleventh Circuit stated the following regarding Arthur's late-filed innocence claim:

> The new affidavits of High and Melson are insufficient to satisfy the threshold

showing under Schlup; what little doubt
they raise as to Arthur's guilt in no way
undermines confidence in the result of
his trial.    To begin with, we observe
that exculpatory affidavits 'produced …
at the 11th hour with no reasonable
explanation for the nearly decade-long
delay' are 'suspect.'    Herrera v.
Collins, 506 U.S. 390, 423, 113 S.Ct.
853,      872      (1993)(O'Connor,    J.,
concurring).    Such    suspicion    is
especially    warranted    when,    as    here,
certain    important    details    of    the
affidavits were subsequently disavowed by
the affiants themselves.    The documents
are substantively unimpressive as well.
High    and    Melson's    revised    testimony
would, at best, attack the credibility of
Wicker,    whose    own    statements    were
corroborated    by    other    witnesses    and
evidence submitted at trial.

Arthur, 452 F.3d at 1246.    Thus, Arthur's late-filed claim

of innocence has been found to be incredible.

        Moreover, when Arthur presented evidence in an effort

to proclaim his innocence, he presented it for the first

time 20 years after the crime and the affiants immediately

recanted the allegedly exculpatory information.    Under these

facts, Arthur has not consistently and steadfastly

maintained his factual innocence.

        Finally, Arthur contends that favorable DNA tests would

indisputably establish his factual innocence.    Both of the

United States District Judges that entered dispositive

orders during the federal habeas proceedings found against Arthur on this point.  See Doc. 8 at 26-30.  There is no need to revisit that extensive analysis, thus the defendants refer this Court to the district court's analysis rejecting Arthur's contention that DNA testing would establish his factual innocence.  Doc. 8, Ex. A at 7 n.6; Doc. 8, Ex. B at 5-7.

**B.  Arthur Is Not Entitled to Testing Under <u>Brady v. Maryland</u>**

Arthur completely ignores that the <u>Grayson</u> Court ruled there is no federal constitutional right to post-conviction testing under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Citing numerous decisions of the Supreme Court for support, the <u>Grayson</u> Court observed that "[t]he <u>Brady</u> rule is grounded in a defendant's right to a fair trial." <u>Grayson</u>, 460 F.3d at 1337.  Quoting <u>United States v. Bagley</u>, 473 U.S. 667, 675-75 (1985), the <u>Grayson</u> Court reiterated that "unless the omission [<u>i.e.,</u> the alleged failure to disclose] deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside." <u>Id.</u> (also citing <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995), and <u>United States v. Agurs</u>, 427 U.S. 97, 108 (1976), as requiring denial of a "fair trial" as a predicate to a <u>Brady</u>

7

claim).    Because    the    _Brady_    doctrine    concerns    "the
suppression of evidence prior to and during trial that was
material to the proceedings and denied the defendant a fair
trial,"  because  Arthur  "makes  no  argument  that  the
biological evidence was suppressed at trial," and because
"it is beyond peradventure that [Arthur] received a fair
trial,"  the  _Brady_  line  of  cases,  the  _Grayson_  Court
concluded, is simply irrelevant.  _Id._ at 1337.

Finally, the _Grayson_ Court emphasized that the only
other federal appellate courts to address this claim – _i.e.,_
that there is a due process right to post-conviction DNA
testing – have rejected it.  Specifically, the _Grayson_ Court
pointed to _Harvey v. Horan_, 278 F.3d 370 (4th Cir. 2002),
and _Alley v. Key_, No. 06-5552, 2006 WL 1313364 (6th Cir.
2006)(unpublished), in which the Fourth and Sixth Circuits,
respectively,  rejected  the  contention  that  _Brady_'s
disclosure obligation extends beyond a defendant's trial so
as  to  support  a  claim  for  post-conviction  DNA  testing.
_Grayson_, 460 F.3d at 1338 & n.7.  Arthur has cited no
support in Supreme Court or Eleventh Circuit jurisprudence
for the proposition that _Brady_'s constitutional rule – _i.e.,_

the disclosure obligation itself – extends beyond a defendant's conviction.

### C. Arthur Is Not Entitled To Testing Under <u>Matthews v. Eldridge</u>

Arthur contends that he has a procedural due process right of post-conviction access to the biological evidence under the balancing test established by the Supreme Court in <u>Matthews v. Eldridge</u>, 424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976). The Supreme Court explained that where the government seeks to deprive an individual of a property or liberty interest, the courts must consider the following factors in determining what administrative safeguards are required:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

<u>Id.</u> at 335, 96 S.Ct. at 903. The <u>Grayson</u> Court rejected the procedural due process claim and that analysis applies here.

As an initial matter, the <u>Grayson</u> Court, noting the division among the Supreme Court in <u>Ohio Adult Parole</u>

Authority v. Woodard, 523 U.S. 272 (1998), questioned whether a Matthews-style analysis was even appropriate to someone who has been duly convicted and sentenced to death. Grayson, 460 F.3d at 1341. For purposes of analysis, however, the Grayson Court "assume[ed] arguendo that Grayson ha[d] some residual, continuing liberty interest under the due process clause and that the Matthews test applies to deprivation of that interest." Id. Even granting that assumption, the Grayson Court held that "the second and third Matthews factors overwhelm [Grayson's] alleged private interest." Id.

The court concluded that the second factor – the risk of erroneous deprivation and the utility of additional process – "weigh[ed] heavily against Grayson's claim" for two reasons: first, because Grayson's "interest in his life was already litigated extensively for twenty years," i.e., through trial, direct appeal, and state and federal post-conviction proceedings; and second, because the DNA testing sought by Grayson (of semen stains on the victim's nightgown and bed sheet) pertained only to the question whether Grayson raped the victim, "and could not exculpate Grayson of the capital murder during a burglary – the only crime of

10

conviction," for which the uncontested evidence of Grayson's guilt "was and is overwhelming."  Id.  "Accordingly," the Grayson Court held, "the risk of an erroneous deprivation of Grayson's alleged liberty interest is low, and the probable value of Grayson's post-conviction access to the evidence is slight."  Id. at 1342.

As to the third factor – the gravity of the State's interest – the Grayson Court, citing decisions of the Supreme Court for support, found that "the government has a strong interest in the finality of duly adjudicated criminal judgments."  Id. (citing Calderon v. Thompson, 523 U.S. 538, 555 (1998), Sawyer v. Whitley, 505 U.S. 333, 338 (1992), and Murray v. Carrier, 477 U.S. 478, 487 (1986)).  Particularly given that Grayson "enjoyed extensive judicial process over the years since his conviction," the court concluded that the interests in "guarding against a flood of requests, protecting the finality of convictions, and ensuring closure for victims and survivors" counseled against Grayson's eleventh-hour testing request.  Id.

Regarding the second Mathews factor, the risk of erroneous deprivation here is nil.  As previously stated, the evidence of guilt is overwhelming.  See supra at 2-4.

11

Arthur's specious claim of innocence is based upon two false affidavits that were secured by a private investigator. Finally, the DNA test results would not prove Arthur's factual innocence.

With respect to the third Matthews factor, the Grayson Court correctly held that the State has a keen interest in preventing a flood of post-conviction DNA-testing requests – or requests for re-examination based on whatever other kind of technology may evolve down the road – and in protecting the finality of duly-adjudicated criminal convictions and sentences. Grayson, 460 F.3d at 1342. Moreover, the State's interest in finality, of course, is undeniable. See, e.g., Calderon v. Thompson, 523 U.S. 538, 555 (1998); Sawyer v. Whitley, 505 U.S. 333, 338 (1992); Murray v. Carrier, 477 U.S. 478, 487 (1986). The interest in finality is even stronger now that the Alabama Supreme Court has set Arthur's execution for September 27, 2007. See Exhibit A. Arthur's execution serves fundamental public policies; not the least of which is ensuring that crime victims and their survivors get the closure and sense of repose to which they are entitled. See Calderon, 523 U.S. at 556 ("Only with

real finality can the victims of crime move forward knowing the moral judgment will be carried out.").

Given these weighty concerns, it is hardly arbitrary or irrational for the State to decline at this late date to reopen Arthur's case for the purpose of DNA testing – particularly given, again, that Arthur has only recently (and based it on false evidence) asserted his factual innocence, that the record evidence of his guilt is overwhelming, that the testing sought could not definitively prove his innocence, and in any event, Arthur inexplicably waited until the eleventh hour to seek testing.

## II.  ARTHUR IS NOT ENTITLED TO DNA TESTING UNDER THE EIGHTH AMENDMENT

The Eighth Amendment prohibits "cruel and unusual punishments."  Eighth Amendment jurisprudence "focuses on penalties meted out by statutes or sentencing judges." Hudson v. McMillian, 503 U.S. 1, 21, 112 S.Ct. 995, 1007 (1992)(Thomas, J., dissenting).  Thus, it is doubtful that a request for DNA testing is appropriately considered under the Eighth Amendment.

Arthur contends that, because 40 states have enacted post-conviction DNA access statutes, evolving standards of decency require DNA testing.  Doc. 12 at 19 (citing The

Innocence Project website). However, even the Innocence Project's website notes that state statutes all have requirements that a petitioner must satisfy before DNA testing is allowed. Thus, the fact that a majority of States have a post-conviction DNA access statute does not establish a standard of contemporary values that all convicted murderers who make a request would receive a DNA test. Arthur's Eighth Amendment claim should be rejected.

In conclusion, the Eighth Amendment applies only to punishments and not to requests for DNA tests.

## III. ARTHUR IS NOT ENTITLED TO DNA TESTING UNDER THE RIGHT OF ACCESS TO COURTS

Arthur contends that the State has violated his right of access to courts by denying him access to the requested evidence. Doc. 12 at 21-23. A plaintiff alleging a deprivation of that right must establish "relevant actual injury." Lewis v. Casey, 518 U.S. 343, 348-351, 116 S.Ct. 2174, 2178-80 (1996). Arthur, as best we can tell, alleges that his "actual injury" is the State's denial of the DNA test. Doc. 12 at 22. He further contends that access to the requested evidence "holds the promise of allowing [Arthur] to establish his claim of actual innocence and, at

14

long last, to have the merits of his case considered in post-conviction proceedings." Id.

Arthur's contention that DNA testing "holds the promise of allowing him to establish his claim of actual innocence" does not establish actual injury. Arthur speculates that if a test is done it may bring forth favorable results. The Supreme Court has explained that to establish actual injury a plaintiff must identify a nonfrivolous, arguable underlying claim and "show that the arguable nature of the underlying claim is more than hope." Christopher v. Harbury, 536 U.S. 403, 415-16 (2002)(citing Lewis v. Casey, 518 U.S. 343, 353, 116 S.Ct. 2174 (1996)). Arthur's underlying claim here is presumably to present newly discovered evidence based on DNA testing. However, there is not a viable newly-discovered-evidence-based claim because there is no newly discovered evidence. There is only a hope of newly discovered evidence, which is insufficient to establish actual injury.

Arthur also contends, again as best we can tell, that DNA testing would allow him to present a "gateway" claim of innocence so that the "merits of his case" can be considered. Doc. 12 at 22. This contention does not

15

establish actual injury. Initially, as with the newly-discovered-evidence-based claims, there is only a hope that actual innocence could be established through DNA testing. Next, Arthur fails to state with specificity what habeas claims would be presented if the gateway innocence claim prevailed. Finally, the State did not impede Arthur's ability to pursue DNA testing in his previously filed federal habeas petition.

In conclusion, Arthur's contention that the denial of DNA testing violates his right of access to courts should be rejected.

## IV.  ARTHUR'S CLEMENCY CLAIM IS MERITLESS

Arthur contends that without a court order requiring DNA testing he will be prevented from effectively pursuing executive clemency. He is wrong, for two reasons.

As an initial matter, neither Arthur's complaint, see Doc. 1, nor his memorandum of law, see Doc. 12 at 23-25, invokes a particular federal constitutional provision - or even the "Constitution" generally - in support of his clemency argument. Having failed even to allege that a "federal right" is implicated, Arthur's clemency-based §1983

16

claim must fail.  Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002).

Arthur's argument is meritless, in any event.  Under Alabama law, the power to commute a death sentence is "vested exclusively in the Governor."  Wilson v. State, 105 So. 2d 66, 71 (Ala. 1958).  Not only is the Governor's commutation power exclusive, it is extensive; the Alabama Constitution states plainly, and without limitation, that "[t]he Governor shall have power to grant reprieves and commutations to persons under sentence of death."  Ala. Const. § 124.  Given that unvarnished language, there can be little doubt that the Governor can, in his discretion, order that DNA testing be performed in connection with a commutation determination.  After all, clemency by its very nature "allow[s] the executive to consider a wide range of factors not comprehended by earlier judicial proceedings and sentencing determinations."  Woodard, 523 U.S. at 280-81, 118 S. Ct. at 1250.

In fact, an Alabama statute expressly requires the State to "furnish the Governor … all pertinent information in [its] possession concerning the applicant or applicants for clemency."  Ala. Code §12-17-184(16).  Arthur argues

(incorrectly) that this statute obligates defendants to agree to DNA testing so that the results can be provided in connection with a clemency application. Doc. 12 at 24. But Arthur misses the point that clemency is considered and granted not as a matter of right, but as "a matter of grace." Woodard, 523 U.S. at 282, 118 S. Ct. at 1250. Arthur further misses the point in doubting that the State, having resisted his testing requests, would now consider such testing "pertinent" under §12-17-184(16) to his clemency application. Doc. 12 at 24. Because under Alabama law commutation decisions are vested exclusively in the Governor, it is the Governor - not the "State" qua prosecutor - who gets to decide what "information" is "pertinent." If the Governor wants DNA testing, the Governor gets DNA testing.

## V.    ARTHUR'S COMPLAINT IS BARRED BY LACHES PURSUANT TO THIS COURT'S DECISION IN GRAYSON V. ALLEN

After the defendants filed their motion to dismiss, this Court decided the case of Grayson v. Allen, 2007 WL 1491009 (M.D. Ala. May 21, 2007). In that case, this Court dismissed on laches grounds a § 1983 action challenging the

18

constitutionality of lethal injection.  <u>Grayson</u> is a well-reasoned decision that applies with equal force here.[1]

As a general rule, two elements are necessary to a finding of laches: "(1) Delay by a party in asserting a known right or claim, or stated otherwise, lack of diligence, lapse of time, or failure timely to assert such right or claim, and (2) prejudice, injury, harm, hardship, damage, circumstances, or condition, that is caused by or results from the delay."  Am. Jur. Equity § 158 (Apr. 2007). "The doctrine of laches is purely equitable in nature and may be invoked to deny equitable relief to one guilty of unconscionable delay in asserting a claim."  <u>Stone v. Gulf American Fire and Cas. Co.</u>, 554 So. 2d 346, 362 (Ala. 1989).

## A.  Arthur Inexcusably Delayed In Filing His § 1983 Action

Arthur inexcusably delayed in filing his § 1983 action because he knew or should have known of his claim years ago because he has known of the existence of the evidence and

---

[1] Arthur's complaint is also time-barred because it was filed after the statute of limitations expired.  See Doc. 8 at 35-36.  Because Arthur did not establish that his claim was timely filed, see Doc. 12 at 26-31, defendants do not offer any reply with one exception.  Arthur asserts that even if his complaint was filed beyond the statute of limitations, he is entitled to "equitable tolling."  Doc. 12 at 31-32.  However, the case cited by Arthur, see <u>Sandvik v. United States</u>, 177 F.3d 1269, 1271 (11th Cir. 1999), applies equitable tolling to a federal post-conviction petition filed pursuant to 28 U.S.C. § 2255.  Arthur makes no argument how that case applies here.

19

the availability of DNA testing.  He could have asserted his claims much earlier and there is no excuse for his having failed to do so.

To the extent that Arthur contends that he could not file this lawsuit while he was pursuing post-conviction proceedings, that claim is easily rejected.  Because a § 1983 lawsuit and federal habeas corpus petition are mutually exclusive causes of action, there is no impediment to filing a § 1983 action while state or federal appeals are actively being pursued.  See Nelson v. Campbell, 541 U.S. 637, 643 (2004); Hutcherson v. Riley, 468 F.3d 750, 754 (11th Cir. 2006).  Issues that are not cognizable in habeas corpus are cognizable under § 1983.  Parallel litigation thus poses no difficulty.  Finally, the Eleventh Circuit ruled in 2002 that claims seeking post-conviction access to biological evidence for DNA testing purposes may be brought in § 1983 actions.  Bradley v. Pryor, 305 F.3d 1287, 1290 (11th Cir. 2002).  Arthur filed his lawsuit five years after Bradley.

## B. Arthur's Inexcusable Delay In Filing Caused Undue Prejudice To The State

This court in Grayson ruled that the third element of the doctrine of laches (prejudice) can be met "if the court believes that, under the circumstances, it is too late to

ascertain the merits of the controversy." Grayson at *9 (quoting Ex parte Grubbs, 542 So. 2d 927, 929 (Ala. 1989)). Prejudice can also be established because the delay in filing "works a disadvantage to another." Hauser v. Foley Co., 190 Ala. 437, 67 So. 252, 253 (Ala. 1914). Finally, "to bar an action, laches requires either delay with notice of the existence of a right that results in a disadvantage to another, or delay which effects a change in circumstances such that the controversy cannot be determined with reasonable accuracy." Grayson at *9 (quoting Jones v. Braggs, 637 So. 2d 1356, 1359 (Ala. Civ. App. 1994)).

This court in Grayson ruled that the delay in filing caused the State undue prejudice "on two fronts." Grayson at *9. First, at the conclusion of federal post-conviction review the State has an "added moral dimension" "in meting out a sentence of death in a timely manner." Id. (quoting Calderon v. Thompson, 523 U.S. 538, 556 (1998)). "To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." Grayson at *9 (quoting Calderon, 523 U.S. at 556). Second, the State is prejudiced because the case

21

would have to be placed on a "fast-track" in order to
litigate it so that a stay of execution would not have to be
granted.  <u>Grayson</u> at *10.  Arthur, and Arthur alone,
controlled when he filed his lawsuit and he chose to file it
at a point when the courts and the parties would have to
expedite their schedules in order to litigate the late-filed
claim.  "Expedited litigation taxes the resources and
schedules of the defendants."  <u>Grayson</u> at *10.  "Moreover,
expedited cases create future inefficiencies, including the
specter of each inmate demanding late in the day the same
consideration given to Grayson."  <u>Id.</u>  This Court should
follow <u>Grayson</u> in ruling that the requirement of undue
prejudice has been established.

> **1.  Arthur's Late-Filed Claim Causes Prejudice
> Because the State Cannot Enforce Its Judgment
> If Arthur Is Allowed To Fully Adjudicate his
> Claim**

The State is prejudiced because Arthur's sentence
cannot be carried out if this lawsuit is fully adjudicated.
The State has a legitimate expectation that it will be able
to carry out a death sentence at the conclusion of federal
habeas review.  The Eleventh Circuit has recently reiterated
the State's expectation in expeditiously carrying out its
duly-adjudicated judgments:

> It is common practice in Alabama for the
> State to seek an execution date soon
> after the Supreme Court denied certiorari
> review of an inmate's federal habeas
> petition. As a matter of common sense,
> completion of collateral review
> eliminates the last possible obstacle to
> execution, and Jones should have foreseen
> that the execution date would likely be
> set promptly upon completion of
> collateral review.

Jones at 639 n.2. See also Grayson at *9 (quoting Jones, 485 F.3d at 641)("We will not interfere with the State's strong interest in enforcing its judgment in this case."); id. (quoting Grayson, 460 F.3d at 1342 ("The government has a strong interest in the finality of duly adjudicated criminal judgments."); id. (quoting Thompson v. Wainwright, 714 F.2d 1495, 1506 (11th Cir. 1983)("Each delay, for its span, is a commutation of a death sentence to one of imprisonment.").

The State suffers undue prejudice based on the "change of circumstances" between the time Arthur should have filed his § 1983 action and the time he actually did. Grayson at *9. The "change of circumstances" is brought about because the State here has a legitimate and legally recognized expectation that justice will finally be served. Arthur's late-filed claim, if litigated to conclusion, will impede

23

the State's interest in carrying out its judgment. "He who would invoke laches must show a delay which has subjected him to a disadvantage in asserting and establishing his claimed right or defense." Esso International, Inc. v. SS Captain John, 443 F.2d 1144, 1150 (5th Cir. 1971). The State here has a "claimed right" (in fact, a right recognized by this Court and the Supreme Court) to carry out its duly-adjudicated judgment.

Laches does not apply only where there is a particular kind of prejudice or change in circumstances, namely, a loss or spoliation of evidence. Courts have recognized that a defendant may be prejudiced in other ways that would support a laches defense. In Chattanoga Manufacturing, Inc. v. Nike, Inc., 301 F.3d 789 (7th Cir. 2002), the plaintiff, who manufactured women's clothing under the trademark "Jordan," sued Nike over its marketing of sportswear apparel endorsed by professional basketball player Michael Jordan. Despite having constructive notice of Nike's alleged infringement of the trademark "Jordan," Chattanoga Manufacturing filed a trademark infringement lawsuit 14 years after being deemed to have obtained such notice. Id. at 792. The Court, in ruling that the lawsuit was barred by laches, held that Nike

24

was prejudiced because over the course of 15 years it had "spent millions of dollars annually promoting its Michael Jordan-endorsed products and has acquired a position as a market leader." Id. at 795. "A delay prejudices a defendant when the assertion of a claim available for some time would be inequitable in light of the delay in bringing that claim and ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." Id. Similarly, the Eleventh Circuit (when it was part of the Fifth Circuit) has applied laches to bar lawsuits filed by public-interest groups when the government has spent vast financial resources on a project. Envornmental Defense Fund, Inc. v. Alexander, 614 F.2d 474 (5th Cir. 1980); Save Our Wetlands, Inc. v. United States Army Corps of Engineers, 549 F.2d 1021 (5th Cir. 1977). The State is similarly prejudiced here because after the many years of litigation culminating in the Supreme Court denying certiorari of Arthur's federal post-conviction appeals, the State has an expectation that it will be able to carry out its duly-adjudicated judgment

Arthur filed this lawsuit approximately five years after Bradley held that such actions could be filed in a §

25

1983 action and after his federal habeas appeals concluded. As recognized by the Supreme Court, the State has a "moral" interest "in meting out a sentence of death in a timely manner" when post-trial proceedings have run their course. Grayson at *9 (quoting Calderon, 523 U.S. at 556). The delay in filing thus causes prejudice because the State cannot carry out Arthur's sentence if his late-filed claim is fully adjudicated.

The timing of Arthur's filing leads ineluctably to the conclusion that his primary purpose for filing his lawsuit is to forestall his execution. The Eleventh Circuit, in the similar circumstances in Jones ruled that: "[b]y waiting until November 2006 to file his challenge to the State's lethal injection protocol, Jones 'leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.'" Jones, 485 F.3d at 640. If Arthur were truly interested in DNA testing or proving his innocence, he would have filed his lawsuit (years ago) so that it could be litigated without the entry of a stay or without the time pressures created by his delay. By filing his § 1983 action when he did, Arthur implicitly asserts

26

that he is entitled to what amounts to a fourth layer of appeal.

Arthur is following in the footsteps of other § 1983 death-row inmates who filed at the conclusion of habeas review and successfully delayed (or prevented, as the case may be) their executions. One of those individuals, Danny Bradley, filed a § 1983 action on June 26, 2001, at the conclusion of his federal post-conviction appeals seeking DNA testing. See Bradley v. Nagle, 2:01-cv-01601-SLB (N.D. Ala.) After that complaint was dismissed, the Eleventh Circuit reversed – ruling that claims seeking post-conviction access to biological evidence for DNA testing purposes may be brought in § 1983 actions. Bradly v. Pryor, 305 F.3d 1287, 1290 (11th Cir. 2002). The federal district court recently entered a memorandum opinion denying relief and dismissing Bradley's lawsuit. Bradley v. Nagle, 2:01-cv-01601-SLB (N. D. Ala. March 29, 2007). Bradley has appealed.

There are two other Alabama death-row inmates who have successfully prevented their executions by filing § 1983 actions at the conclusion of federal habeas review. Of course, as previously stated, Grayson filed a § 1983 action

27

on November 15, 2002, requesting DNA testing.  Grayson v. Pryor, CV-02-BE-2800-S.  Grayson's lawsuit was dismissed by the federal district court and rejected on appeal by this Court and the Supreme Court.  See Grayson v. King, 460 F.3d 1328 (11th Cir. 2006), cert. denied, Grayson v. King, 127 S.Ct. 1005 (Jan. 8, 2007).  Similarly, David Larry Nelson filed a complaint on October 6, 2003, alleging that any use of a so-called "cut-down" procedure would be unconstitutional.  Nelson v. Campbell, 2:03-cv-1008-MHT (M.D. Ala.).  The Supreme Court ultimately reversed the lower courts, ruling that Nelson could challenge the "cut-down" procedure in a § 1983 action.  See Nelson v. Campbell, 541 U.S. 637, 124 S.Ct. 2117 (2004).  The case was subsequently remanded to the federal district court where it languishes to this day.  Each of these § 1983 cases delayed an execution.

Thus, these examples demonstrate that the State suffers prejudice from Arthur's unjustifiable delay in filing. Arthur is presumably aware that other death-row inmates have filed § 1983 actions at the conclusion of federal habeas review and successfully forestalled their executions.  As previously stated, the Eleventh Circuit has ruled that this

28

type of challenge has been available since 2002.  <u>Bradley</u>, 305 F.3d at 1290.  That Arthur waited five years to file his lawsuit reveals his primary motive, which is to prevent his execution – not to prove his innocence.

> **2.  Prejudice Results When Courts Are Forced To Expedite Litigation Schedules Due To Late-Filed Claims**

Given when this case was filed, the only possible way to reach a hearing on the merits is to expedite the schedule.  Expedited litigation of a complex case, even a single complex case, causes prejudice.  This case cannot be litigated by Arthur's execution on September 27.

The problem, and the prejudice, is magnified many fold because we are not talking about just our case.  There are numerous § 1983 actions that have been filed at the conclusion of inmates's federal post-conviction appeals and no end in sight to the cases that will follow as other inmates follow Arthur's strategy.[2]  As this Court found in <u>Grayson</u>, "expedited cases create future inefficiencies, including the specter of each inmate demanding late in the

---

[2] Arthur has a § 1983 lethal-injection action pending in the Southern District.  <u>See</u> <u>Arthur v. Allen</u>, CV-07-342.  There are five other § 1983 lethal-injection actions pending.  <u>McNair v. Allen</u>, 2:06-cv-695-WKW; <u>Callahan v. Allen</u>, 2:06-cv-919-WKW; <u>Williams v. Allen</u>, 2:07-cv-307-MEF; <u>Siebert v. Allen</u>, 2:07-cv-295-MEF; <u>Hallford v. Allen</u>, CV-07-410.  This Court's decision in <u>Grayson</u> has been appealed.  <u>See</u> <u>Grayson v. Allen</u>, 07-12364-P.

day the same consideration given to Grayson." <u>Grayson</u> at *10. Again, there are seven other inmates who have filed lethal-injection challenges as their cases reach the end of federal habeas review. As the parties approach execution dates in those cases, those plaintiffs will demand discovery and the parties will have to retain expert witnesses. The State is prejudiced in having to litigate these claims over and over again, particularly when execution dates have been set in three of the cases and will be set soon in the others.

The strategy of the day for death-row inmates is to seek a delay of execution by challenging lethal-injection procedures, and it apparently is a strategy that all death-row inmates will use. Currently, the cases are decided on the basis of a motion for stay of execution, and the result is a rushed case that prejudices the State as it tries to handle litigation of the merits, litigation of a stay, and expedited appeals, often occurring simultaneously in multiple cases. It will continue to be this way unless there is a rule, either based on laches or the statute of limitations, that requires inmates to file by a date certain. Until then, and for purposes of this case, the

late filing and rushed appeals of multiple cases interfere with the State's right to timely enforcement of judgments, places an unfair burden on the State, and results in an incomplete and less reliable record.

## VI.  CONCLUSION

For the reasons stated in this reply brief and in the motion to dismiss, see Doc. 8, the defendants respectfully request this Court dismiss Arthur's complaint.

Respectfully submitted,

TROY KING
ALABAMA ATTORNEY GENERAL


/s/ J. Clayton Crenshaw
J. CLAYTON CRENSHAW
ASSISTANT ATTORNEY GENERAL

Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130
Office (334)242-7300
Fax (334) 353-3637
Email: ccrenshaw@ago.state.al.us

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following: **Charles E. Vercelli, Jr., Sultana L. Bennett, Suhana S. Han, and Jordan T. Razza.**

I also served a copy of the foregoing document on the following attorneys by placing a copy of the same in the United States mail, first class postage prepaid and addressed as follows:

        Jennifer L. Parkinson
        Sara L. Manaugh
        125 Broad Street
        New York, NY  10004

                                /s/ J. Clayton Crenshaw
                                J. CLAYTON CRENSHAW
                                ASSISTANT ATTORNEY GENERAL

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL  36130
Office (334) 242-7300
Fax (334) 353-3637
Email: ccrenshaw@ago.state.al.us

# EXHIBIT A

IN THE SUPREME COURT OF ALABAMA
June 22, 2007

1951985

Ex parte Thomas Douglas Arthur.  PETITION FOR WRIT OF
CERTIORARI TO THE COURT OF CRIMINAL APPEALS  (In re: Thomas
Douglas Arthur v. State of Alabama)  (Jefferson Circuit
Court: CC-87-577; Criminal Appeals: CR-91-0718).

<u>ORDER</u>

The State of Alabama having filed a motion to set an
execution date, and the same having been submitted and duly
considered by the Court, it is considered that the motion to
set an execution date is due to be granted.

IT IS NOW ORDERED that September 27, 2007, be fixed as
the date for the execution of the convict, Thomas Douglas
Arthur, who is now confined in the William C. Holman Unit of
the Prison System at Atmore, Alabama.

IT IS, THEREFORE, ORDERED that the Warden of the
William C. Holman Unit of the prison system at Atmore in
Escambia County, Alabama, execute the order, judgment and
sentence of law on September 27, 2007, in the William C.
Holman Unit of the prison system, by the means provided by
law, causing the death of such convict.

IT IS FURTHER ORDERED that the Marshal of this Court
shall deliver, within five (5) days from this date, a
certified copy of this order to the Warden of the William C.
Holman Unit of the prison system at Atmore, in Escambia
County, Alabama, and make due return thereon to this Court.

IT IS FURTHER ORDERED that the Clerk of this Court
shall transmit forthwith a certified copy of this order to
the following:  the Governor of Alabama, the Clerk of the
Court of Criminal Appeals, the Attorney General of Alabama,
the Commissioner of the Alabama Department of Corrections,
the attorney of record for Thomas Douglas Arthur and the
Clerk of the Circuit Court of Jefferson County, Alabama by
United States mail, postage prepaid.

IT IS FURTHER ORDERED that the Attorney General of
Alabama is directed, forthwith, to notify the United States

District Court for the Northern District of Alabama of this
order.

\* \* \* \* \* \* \* \*


    I, Robert G. Esdale, Clerk of the Supreme Court of
Alabama, do hereby certify the foregoing is a full, true and
correct copy of the judgment and order of the Supreme Court
of Alabama directing the execution of the death sentence of
Thomas Douglas Arthur as the same appears of record in this
Court.

    Given under my hand and the seal of this Court on this
date, June 22, 2007.



Robert G. Esdale
Clerk
Supreme Court of Alabama