IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THOMAS D. ARTHUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-cv-319-WKW |
| | ) | |
| TROY KING, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Before the court is Thomas D. Arthur's Motion to Alter or Amend Judgment (Doc. # 18). For the reasons that follow, the court will DENY the motion.

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to amend or alter the judgment of a court. *See* Fed. R. Civ. P. 59(e). "The decision to alter or amend a judgment is committed to the sound discretion of the district court." *Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006) (citations omitted). "There are four basic grounds for granting a Rule 59(e) motion: (1) manifest errors of law or facts upon which the judgment was based; (2) newly discovered or previously unavailable evidence; (3) manifest injustice in the judgment; and (4) an intervening change in the controlling law." *Jacobs v. Electronic Data Sys. Corp.*, 240 F.R.D. 595, 599 (M.D. Ala. 2007) (Thompson, J.) (citing 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2810.1, at 124-27 (2d ed. 1995))

On August 17, 2007, the court granted the defendants' motion to dismiss. On August 27, 2007, Arthur timely filed his Motion to Alter or Amend Judgment.[1] In his motion, Arthur argues that

---

[1] Federal Rule of Civil Procedure 59(e) provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

a new unsworn statement from Ray Melson is "powerful" evidence of his innocence, that *Grayson v. King*, 460 F.3d 1328 (11th Cir. 2006) is factually distinguishable from his case, and that the court erred in finding that he unreasonably delayed in seeking DNA testing of the evidence compiled by the authorities. The court is not persuaded by Arthur's arguments for the following reasons.

A.   *Melson's Testimony*

Arthur alleges that a new unsworn statement from Melson (Mot. Ex. D) provides "powerful evidence of [his] innocence." (Mot. at 1.) In the course of Arthur's post-conviction litigation, Melson has provided two affidavits; one affidavit alleging that Melson saw Arthur on the day of the murder (Mot. Ex. A), and the second recanting the first (Mot. Ex. B). His third statement allegedly sheds light on his previous inconsistencies. In his first affidavit dated August 2, 2002, Melson testified that Arthur visited Copper Mobile Homes of Decatur, Melson's employer, between 8:00 a.m. and 9:00 a.m. on the day of Troy's murder. Melson testified that he and Alphonso High spoke to Arthur "for about 20 to 30 minutes." (Mot. Ex. A ¶ 2.) On September 20, 2002, Melson recanted his first affidavit. Melson recalled that he was on medication during the time he signed the first affidavit, and he "did not really remember what was in the affidavit, or if [he] even read it the day that [he] signed it." (Mot. Ex. B at 1.) Melson testified that he "cannot say with any certainty" that he saw Arthur on the morning of Troy's murder. (*Id.* at 2.) Now, in an attempt to explain why he recanted his first affidavit with his second, Melson's unsworn statement, dated August 22, 2007, alleges that he was on pain medication the day that he signed the *second* affidavit and was unaware of its exact contents at the time. Moreover, he alleges that he did indeed see Arthur on the morning of Troy's murder. Melson now claims, for the first time, that the day was memorable because he

delivered a double-wide trailer to Birmingham, which was "unusual," and that "the trailer got stuck in the mud while [he] was transporting it . . . ."  (Mot. Ex. D ¶¶ 12-13.)

For a number of important reasons, the court cannot credit the latest iteration of Melson's "fundamentally wounded" recollection.[2]  The statement is unsworn and under ordinary circumstances would not be considered at all.  More importantly, the statement creates more questions than it answers, not about Arthur's involvement in Troy's murder, but about the credibility of Melson.  The effects of Melson's prescription drug use and abuse (used as an excuse in both retractions), his not coming forward at the time of any of the three highly publicized trials and subsequent death sentences, the addition of still more new facts,[3] and the ability to clearly remember an exact date and time over twenty-five years ago are but a few.  The third statement actually diminishes the value of anything Melson may have to say to the point of no credibility at all.  It is a repudiation of a repudiation.  Under the circumstances, it adds zero to the DNA equation.

Even more telling, Melson's third statement comes one month shy of *five years since he repudiated his first affidavit.*  The court cannot fathom, if this is in fact "powerful evidence of Mr. Arthur's innocence" (Mot. at 3.), why the statement did not surface one, two, three, or four years after the 2002 repudiation affidavit, or even as an exhibit filed with the complaint in April 2007. *See Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990) ("Motions, such as motions to amend, should not be used to raise arguments which could, and should, have been made before the judgment is

---

[2]  *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006).

[3]  Melson claims that the delivery of the double-wide trailer to Birmingham was unusual, and that the trailer got stuck in the mud. (*See* Mot. Ex. D ¶¶ 12-13.))

issued."(citation and internal quotation marks omitted)).[4] The court can only conclude that this motion is a desperate last-minute effort in the shadow of an execution date to postpone or avoid that date.

**B.    *Grayson***

Arthur argues that the procedural safeguards afforded to Grayson were more adequate than those afforded to himself. The court disagrees. Mr. Grayson "received a fair trial, a direct appeal, and both state and federal habeas proceedings and appeals." *Grayson*, 460 F.3d at 1341. Similarly, the procedural safeguards afforded to Arthur included "three trials and three convictions that resulted in death sentences (two convictions were reversed in state court proceedings); state and federal habeas proceedings; and a stay of execution." (Doc. # 14 at 15.) Moreover, Arthur argues that, unlike *Grayson*, he never received a review on the merits of his claims because the district court dismissed his habeas proceedings as untimely. Arthur creatively attempts to relitigate an already settled habeas issue. For the court to accept Arthur's argument, it must find that he tolled the statute of limitations for his habeas action.

Judge Edwin Nelson concluded, in a detailed opinion, that Arthur did not file his habeas petition within the one year statute of limitations. *See Arthur v. Haley*, Mem. of Op., No. CV01-N-0983-S, at 6 (N.D. Ala. Dec. 4, 2002). Subsequently, Judge Scott Coogler denied Arthur's motion to amend or alter the judgment of Judge Nelson. *See Arthur v. Haley*, Mem. of Op., No. 01-N-0983, at 5 (N.D. Ala. June 4, 2003). The Eleventh Circuit upheld the decisions in *Arthur v. Allen*, 452 F.3d 1234 (11th Cir.), modified on reh'g, 459 F.3d 1310 (11th Cir. 2006), and the United States Supreme

---

[4] Arthur's briefing throughout this case has argued the first version of Melson's story with no hint that a third version was in the wings.

Court refused to grant certiorari. *Arthur v. Allen*, __ U.S. __, 127 S.Ct. 2033 (2007). Arthur failed to persuade two district court judges, the Eleventh Circuit, and the United States Supreme Court of the validity of his argument. The court refuses to entertain an analysis of Arthur's previously unsuccessful argument. Moreover, the fact that Arthur has been afforded significant procedural safeguards for his liberty interest differs from considerations of whether he took advantage of them.

C.   *Unreasonable Delay*

Arthur avers that the court should not consider unreasonable delay in its analysis of his claims for two reasons: he had ineffective assistance of counsel and could not take advantage of DNA testing at his second and third trials, and the diligence analysis applied in Judge Nelson and Coogler's habeas opinions is not good law. As to Arthur's first argument, his claims of ineffective assistance of trial counsel have been litigated. *See Arthur v. State*, 711 So. 2d 1031 (Ala. Crim. App. 1996), *aff'd Ex parte Arthur*, 711 So. 2d 1097 (Ala. 1997). Moreover, these claims were not before the court in his § 1983 complaint for DNA testing.

As to Arthur's second argument, unreasonable delay is a necessary equitable consideration in determining whether to grant a stay of execution. *See Nelson v. Campbell*, 541 U.S. 637, 649-650 (2004). The court took notice of the dilatory actions of Arthur by referencing the *findings of fact* of Judges Nelson and Coogler, findings which were affirmed by the Eleventh Circuit. The question before this court was whether Arthur unreasonably delayed in seeking access to DNA testing, not whether he was diligent in securing an evidentiary hearing in his habeas action. The diligence analysis to which Arthur refers as "not good law" (Mot. at 7) is in reference to the latter point, not the former.

Having considered all Arthur's arguments and for the above reasons, it is ORDERED that Arthur's Motion to Alter or Amend Judgment (Doc. # 18) is DENIED.

DONE this 30th day of August, 2007.

/s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).