IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THOMAS D. ARTHUR,      ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.        ) | CASE NO. 2:07-cv-319-WKW |
| ) | |
| TROY KING, *et al.*,    ) | |
| ) | |
| Defendant.    ) | |
| ) | |

**OPINION AND ORDER**

Before the court is Thomas D. Arthur's Motion to Alter or Amend Judgment (Doc. # 18). For the reasons that follow, the court will DENY the motion.

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to amend or alter the judgment of a court. *See* Fed. R. Civ. P. 59(e). "The decision to alter or amend a judgment is committed to the sound discretion of the district court." *Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006) (citations omitted). "There are four basic grounds for granting a Rule 59(e) motion: (1) manifest errors of law or facts upon which the judgment was based; (2) newly discovered or previously unavailable evidence; (3) manifest injustice in the judgment; and (4) an intervening change in the controlling law." *Jacobs v. Electronic Data Sys. Corp.*, 240 F.R.D. 595, 599 (M.D. Ala. 2007) (Thompson, J.) (citing 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2810.1, at 124-27 (2d ed. 1995))

On August 17, 2007, the court granted the defendants' motion to dismiss. On August 27, 2007, Arthur timely filed his Motion to Alter or Amend Judgment.[1] In his motion, Arthur argues that

---

[1] Federal Rule of Civil Procedure 59(e) provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

a new unsworn statement from Ray Melson is "powerful" evidence of his innocence, that *Grayson v. King*, 460 F.3d 1328 (11th Cir. 2006) is factually distinguishable from his case, and that the court erred in finding that he unreasonably delayed in seeking DNA testing of the evidence compiled by the authorities. The court is not persuaded by Arthur's arguments for the following reasons.

*A.     Melson's Testimony*

Arthur alleges that a new unsworn statement from Melson (Mot. Ex. D) provides "powerful evidence of [his] innocence." (Mot. at 1.) In the course of Arthur's post-conviction litigation, Melson has provided two affidavits; one affidavit alleging that Melson saw Arthur on the day of the murder (Mot. Ex. A), and the second recanting the first (Mot. Ex. B). His third statement allegedly sheds light on his previous inconsistencies. In his first affidavit dated August 2, 2002, Melson testified that Arthur visited Copper Mobile Homes of Decatur, Melson's employer, between 8:00 a.m. and 9:00 a.m. on the day of Troy's murder. Melson testified that he and Alphonso High spoke to Arthur "for about 20 to 30 minutes." (Mot. Ex. A ¶ 2.) On September 20, 2002, Melson recanted his first affidavit. Melson recalled that he was on medication during the time he signed the first affidavit, and he "did not really remember what was in the affidavit, or if [he] even read it the day that [he] signed it." (Mot. Ex. B at 1.) Melson testified that he "cannot say with any certainty" that he saw Arthur on the morning of Troy's murder. (*Id.* at 2.) Now, in an attempt to explain why he recanted his first affidavit with his second, Melson's unsworn statement, dated August 22, 2007, alleges that he was on pain medication the day that he signed the *second* affidavit and was unaware of its exact contents at the time. Moreover, he alleges that he did indeed see Arthur on the morning of Troy's murder. Melson now claims, for the first time, that the day was memorable because he

delivered a double-wide trailer to Birmingham, which was "unusual," and that "the trailer got stuck in the mud while [he] was transporting it . . . ."  (Mot. Ex. D ¶¶ 12-13.)

For a number of important reasons, the court cannot credit the latest iteration of Melson's "fundamentally wounded" recollection.[2]  The statement is unsworn and under ordinary circumstances would not be considered at all.  More importantly, the statement creates more questions than it answers, not about Arthur's involvement in Troy's murder, but about the credibility of Melson.  The effects of Melson's prescription drug use and abuse (used as an excuse in both retractions), his not coming forward at the time of any of the three highly publicized trials and subsequent death sentences, the addition of still more new facts,[3] and the ability to clearly remember an exact date and time over twenty-five years ago are but a few.  The third statement actually diminishes the value of anything Melson may have to say to the point of no credibility at all.  It is a repudiation of a repudiation.  Under the circumstances, it adds zero to the DNA equation.

Even more telling, Melson's third statement comes one month shy of *five years since he repudiated his first affidavit.*  The court cannot fathom, if this is in fact "powerful evidence of Mr. Arthur's innocence" (Mot. at 3.), why the statement did not surface one, two, three, or four years after the 2002 repudiation affidavit, or even as an exhibit filed with the complaint in April 2007. *See Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990) ("Motions, such as motions to amend, should not be used to raise arguments which could, and should, have been made before the judgment is

---

[2] *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006).

[3] Melson claims that the delivery of the double-wide trailer to Birmingham was unusual, and that the trailer got stuck in the mud. (*See* Mot. Ex. D ¶¶ 12-13.))

issued."(citation and internal quotation marks omitted)).[4]  The court can only conclude that this motion is a desperate last-minute effort in the shadow of an execution date to postpone or avoid that date.

**B.    *Grayson***

Arthur argues that the procedural safeguards afforded to Grayson were more adequate than those afforded to himself.  The court disagrees.  Mr. Grayson "received a fair trial, a direct appeal, and both state and federal habeas proceedings and appeals." *Grayson*, 460 F.3d at 1341. Similarly, the procedural safeguards afforded to Arthur included "three trials and three convictions that resulted in death sentences (two convictions were reversed in state court proceedings); state and federal habeas proceedings; and a stay of execution." (Doc. # 14 at 15.)  Moreover, Arthur argues that, unlike *Grayson*, he never received a review on the merits of his claims because the district court dismissed his habeas proceedings as untimely.  Arthur creatively attempts to relitigate an already settled habeas issue.  For the court to accept Arthur's argument, it must find that he tolled the statute of limitations for his habeas action.

Judge Edwin Nelson concluded, in a detailed opinion, that Arthur did not file his habeas petition within the one year statute of limitations. *See Arthur v. Haley*, Mem. of Op., No. CV01-N-0983-S, at 6 (N.D. Ala. Dec. 4, 2002).  Subsequently, Judge Scott Coogler denied Arthur's motion to amend or alter the judgment of Judge Nelson. *See Arthur v. Haley*, Mem. of Op., No. 01-N-0983, at 5 (N.D. Ala. June 4, 2003).  The Eleventh Circuit upheld the decisions in *Arthur v. Allen*, 452 F.3d 1234 (11th Cir.), modified on reh'g, 459 F.3d 1310 (11th Cir. 2006), and the United States Supreme

---

[4] Arthur's briefing throughout this case has argued the first version of Melson's story with no hint that a third version was in the wings.

4

Case 2:07-cv-00319-WKW-TFM   Document 19   Filed 08/30/07   Page 5 of 6

Court refused to grant certiorari. *Arthur v. Allen*, __ U.S. __, 127 S.Ct. 2033 (2007). Arthur failed to persuade two district court judges, the Eleventh Circuit, and the United States Supreme Court of the validity of his argument. The court refuses to entertain an analysis of Arthur's previously unsuccessful argument. Moreover, the fact that Arthur has been afforded significant procedural safeguards for his liberty interest differs from considerations of whether he took advantage of them.

C.   *Unreasonable Delay*

Arthur avers that the court should not consider unreasonable delay in its analysis of his claims for two reasons: he had ineffective assistance of counsel and could not take advantage of DNA testing at his second and third trials, and the diligence analysis applied in Judge Nelson and Coogler's habeas opinions is not good law. As to Arthur's first argument, his claims of ineffective assistance of trial counsel have been litigated. *See Arthur v. State*, 711 So. 2d 1031 (Ala. Crim. App. 1996), *aff'd Ex parte Arthur*, 711 So. 2d 1097 (Ala. 1997). Moreover, these claims were not before the court in his § 1983 complaint for DNA testing.

As to Arthur's second argument, unreasonable delay is a necessary equitable consideration in determining whether to grant a stay of execution. *See Nelson v. Campbell*, 541 U.S. 637, 649-650 (2004). The court took notice of the dilatory actions of Arthur by referencing the *findings of fact* of Judges Nelson and Coogler, findings which were affirmed by the Eleventh Circuit. The question before this court was whether Arthur unreasonably delayed in seeking access to DNA testing, not whether he was diligent in securing an evidentiary hearing in his habeas action. The diligence analysis to which Arthur refers as "not good law" (Mot. at 7) is in reference to the latter point, not the former.

5

Having considered all Arthur's arguments and for the above reasons, it is ORDERED that Arthur's Motion to Alter or Amend Judgment (Doc. # 18) is DENIED.

DONE this 30th day of August, 2007.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE