PUBLISH

RECEIVED

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE ELEVENTH CIRCUIT**

2007 OCT 26  A 9:44

DEBRA P. HACKETT
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

No. 07-13933

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 21, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 07-00319-CV-WKW

THOMAS D. ARTHUR,

Plaintiff-Appellant,

versus

TROY KING,
 Attorney General for the State of Alabama, in his official capacity,
BRYCE U. GRAHAM, JR.,
 District Attorney for Colbert County, in his official capacity,
RONNIE MAY,
 Sheriff for Colbert County, in his official capacity,
M. DAVID BARBER,
 District Attorney for Jefferson County, in his official capacity,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Alabama

**(September 21, 2007)**

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Plaintiff Thomas D. Arthur is an Alabama death row inmate scheduled for execution by lethal injection on 27 September 2007. On 12 April 2007, Arthur filed a 42 U.S.C. § 1983 complaint in the United States District Court for the Middle District of Alabama seeking access to specific materials collected at the crime scene for DNA and other testing.

The United States Supreme Court denied Arthur's petition for writ of certiorari in his federal habeas action on 16 April 2007, and, on 17 April 2007, the State of Alabama ("Alabama") filed a motion with the Alabama Supreme Court to set an execution date. In this case, defendants Troy King, Bryce U. Graham, Jr., Ronnie May, and M. David Barber (collectively, "King") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on 18 May 2007, arguing that Arthur's complaint failed to state a claim upon which relief could be granted.

On 22 June 2007, the Alabama Supreme Court granted Alabama's motion, and set the execution date for 27 September 2007. The district court subsequently granted King's motion to dismiss, Arthur v. King, No. 07-cv-319-WKW, 2007 WL 2381992 (M.D. Ala. Aug. 17, 2007) ("Arthur XX"), and denied Arthur's motion to alter or amend judgment, 2007 WL 2539962 (M.D. Ala. Aug. 30, 2007) ("Arthur XXI"). Arthur timely appealed and requested expedited briefing and a stay of execution pending appeal. We granted expedited briefing and now affirm

2

the district court's judgment dismissing Arthur's § 1983 action.  We also deny his motion for a stay of execution pending appeal as moot.

## I. BACKGROUND

The details of Arthur's offense are set forth in our opinion affirming the district court's judgment denying Arthur federal habeas relief.  See Arthur v. Allen, 452 F.3d 1234 (11th Cir.) ("Arthur XV"), modified on reh'g, 459 F.3d 1310 (11th Cir. 2006) ("Arthur XVI"), cert. denied, _ U.S. _, 127 S. Ct. 2033 (2007) ("Arthur XVII").  Briefly, in 1982, Arthur, while serving a sentence for murder in the second degree and assigned to a work release center, murdered Troy Wicker, the husband of one of Arthur's paramours, Judy Wicker, by shooting Wicker through the right eye, while he was asleep, with a .22 caliber pistol.

Arthur was indicted for murder, convicted, and sentenced to death by electrocution in 1982.  His conviction and sentence were affirmed by the Alabama Court of Appeals, Arthur v. State, 472 So. 2d 650 (Ala. Crim. App. 1984) ("Arthur I"), but reversed by the Alabama Supreme Court because the trial court had improperly permitted evidence of Arthur's prior murder conviction.  Ex parte Arthur, 472 So. 2d 665, 668-70 (Ala. 1985) ("Arthur II").  The case was remanded for a new trial.  Arthur v. State, 472 So. 2d 670 (Ala. Crim. App. 1985) ("Arthur III").  In 1987, Arthur was again convicted and sentenced to death.  His conviction

was reversed, however, because of the admission of Arthur's statement to the police after he had invoked his right to remain silent. Arthur v. State, 575 So. 2d 1165, 1171-75 (Ala. Crim. App. 1990) ("Arthur IV"), cert. denied, In re Arthur, 575 So. 2d 1191 (Ala. 1991) (per curiam) ("Arthur V").  In 1991, Arthur was indicted and convicted of murder for pecuniary gain. Arthur was sentenced to death in 1992.  His conviction and sentence were affirmed. Arthur v. State, 711 So. 2d 1031 (Ala. Crim. App. 1996) ("Arthur VI"), affirmed, In re Arthur, 711 So. 2d 1097 (Ala. 1997) ("Arthur VII").  He did not file a petition for writ of certiorari to the United States Supreme Court.

Approximately twenty-nine months later, in September 2000, Alabama filed a motion with the Alabama Supreme Court to set an execution date.  In January 2001, Arthur filed a petition for postconviction relief with the state trial court. The petition, however, was dismissed as untimely because of a mandatory two-year limitations period required by Alabama Rule of Criminal Procedure 32.2(c), and that decision was affirmed. Arthur v. State, 820 So. 2d 886, 888-90 (Ala. Crim. App. 2001) (per curiam) ("Arthur VIII"), cert. denied, Arthur v. Alabama, 535 U.S. 1053, 122 S. Ct. 1909 (2002) ("Arthur IX").  The Alabama Supreme Court set execution date, Ex parte Arthur, 821 So. 2d 251 (Ala. 2001) ("Arthur X") for 27 April 2001.

4

On 20 April 2001, Arthur filed a federal petition for writ of habeas corpus. The district court granted a stay of execution.  We denied a motion to vacate the stay, Arthur v. Haley, 248 F.3d 1302, 1303 (11th Cir. 2001) (per curiam) ("Arthur XI"), and the Supreme Court denied an application to vacate the stay of execution of sentence of death.  Haley v. Arthur, 532 U.S. 1004, 121 S. Ct. 1676 (2001) ("Arthur XII").  The federal district court dismissed Arthur's habeas petition, Arthur v. Haley, No. CV-01-N-0983-S (N.D. Ala. Dec. 4, 2002) ("Arthur XIII"), and his motion to alter or amend the judgment, Arthur v. Haley, No. CV-01-N-0983-S (N.D. Ala. Jun 5, 2003) ("Arthur XIV"), but granted a certificate of appealability.  We affirmed the district court's denial of habeas relief in 2006, Arthur XV, and the Supreme Court denied his petition for writ of certiorari on 16 April 2007, Arthur XVII.  The Alabama Supreme Court subsequently set the date of execution.[1]

## II. DISCUSSION

During the district court's consideration of Arthur's 2001 federal petition for writ of habeas corpus, Arthur moved for leave to conduct discovery related to

---

[1]    In May 2007, Arthur also filed an action under § 1983 in the Southern District of Alabama, challenging Alabama's method of execution.  The district court, however, granted Alabama's motion to dismiss based on laches, Arthur v. Allen, No. 07-0342, 2007 WL 2320069 (S.D. Ala. Aug. 10, 2007) ("Arthur XVIII"), and we affirmed, No. 07-13929 (11th Cir. Sep. 17, 2007) (Arthur XIX").

his claim of actual innocence. Arthur XIII at 5; Arthur XIX at 2. He sought the clothing that Wicker was wearing on the day of the murder, the rape kit created that same day, the hair samples and wig recovered from Judy Wicker's car, the hair sample and vacuum sweepings recovered from the Wickers' residence, spent cartridge casings and a pillowcase found near Troy Wicker's body, the bullet recovered from Troy Wicker, and photographs of the crime scene. Arthur XIII at 5; Arthur XIV at 3; Arthur XV at 1247 n.9. The district court denied the request, finding that it would, at best, impeach Judy Wicker's testimony but would not establish Arthur's actual innocence claim. Arthur XIII at 7; Arthur XIV at 5-7. We affirmed, noting that Arthur failed to satisfy the diligence requirement of 28 U.S.C. § 2254, failed to pursue the testing of the requested evidence during his three trials or during state court postconviction proceedings, and failed to demonstrate good cause for his failure to seek the evidence. Arthur XV at 1248. We also noted that "good cause for discovery cannot arise from mere speculation" and that the Arthur's claim that the discovery might prove that he was not the perpetrator was "not enough." Arthur XVI at 1311.

Arthur's § 1983 action sought access to the biological and other evidence used at his trial, and alleged that King's refusal to provide him with the evidence violated his Fourteenth Amendment right to due process, his Eighth Amendment

6

right not to be subjected to cruel and unusual punishment, his right of access to the

courts, and his clemency rights.   The district court dismissed the § 1983

challenge, finding that Arthur's request could not be litigated without the entry of

a stay of execution and that Arthur had failed "to overcome the strong equitable

presumption against the grant of a stay." <u>Arthur XIX</u>, slip op. at 9, 2007 WL

2381992 at *4.  It concluded that Arthur had failed to demonstrate a likelihood of

success on the merits, that prejudice to Alabama outweighed prejudice to Arthur,

and that Arthur unreasonably delayed filing his § 1983 action. <u>Id.</u> at 21-25, 2007

WL 2381992 at *11-12.

On appeal, Arthur argues that the district court erred in dismissing his

complaint and in refusing to alter or amend its judgment.  He maintains that the

district court erred in concluding that he was provided procedural safeguards

regarding a fair trial because his postconviction proceedings were dismissed as

untimely and he has thus not received a review on the merits.  He contends that it

was error to apply a "strong equitable presumption against the grant of a stay"

when no stay was sought and there was no showing that a stay was needed for his

claims to be litigated.  He maintains that the district court erred by concluding that

he had failed to demonstrate a likelihood of success on the merits because DNA

testing could identify the actual perpetrator.  He argues that the district court failed

to recognize, in its relative harm analysis, that Arthur seeks exculpation, and erred

in concluding that he unreasonably delayed in filing his action.  He also asserts

that the district court erred in not crediting the newly discovered exculpatory

evidence without holding an evidentiary hearing.

We review a district court's dismissal under Rule 12(b)(6) for failure to

state a claim de novo, accepting the complaint's allegations as true and construing

them in the light most favorable to the plaintiff.  Grayson v. King, 460 F.3d 1328,

1336 n. 5 (11th Cir. 2006) ("Grayson I"); Swann v. S. Health Partners, Inc., 388

F.3d 834, 836 (11th Cir. 2004).  We will affirm only if the Rule 12(b)(6) motion

establishes, beyond doubt, that there is no set of facts to support the plaintiff's

claim which would entitle the plaintiff to relief.  Spain v. Brown & Williamson

Tobacco Corp., 363 F.3d 1183, 1187 (11th Cir. 2004).

Although a district court's decision to grant or deny equitable relief is

reviewed for abuse of discretion, Preferred Sites, LLC v. Troup County, 296 F.3d

1210, 1220 (11th Cir. 2002); United States SEC v. Ginsburg, 362 F.3d 1292, 1297

(11th Cir. 2004), we review the underlying decisions regarding questions of law

de novo and findings of fact for clear error.  Preferred Sites, LLC, 296 F.3d at

1220.  "A district court by definition abuses its discretion when it makes an error

of law."  Koon v. United States, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047 (1996).

8

A plaintiff may seek postconviction access to biological evidence for DNA testing as a § 1983 action, but must show that denial of such access "deprive[s] him of a federally protected right" in order to state a claim. Grayson I at 1336. In Grayson I, we held that "Grayson ha[d] no asserted constitutional right to [biological evidence for DNA testing] under the factual circumstances of the case," but left open the possibility that another § 1983 plaintiff might prevail. Id. at 1342-43.[2]

"[T]he equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 . . . challenges are equally applicable to requests for both stays and injunctive relief" and are "not available as a matter of right.'" Williams v. Allen, ___ F.3d ___, 2007 WL 2368028 at *2 (11th Cir. Aug. 21, 2007) (quoting Grayson v. Allen, 491 F.3d 1318, 1322 (11th Cir. 2007) ("Grayson II"), cert. denied, _ U.S. _, _ S. Ct. _, 2007 WL 2086662, 76 USLW 3049 (Jul. 26, 2007)). Those equitable principles include (1) "sensitiv[ity] to the State's strong interest in enforcing its criminal judgments without undue

---

[2] The facts in Grayson I established that (1) DNA testing was available as early as 1986, but that the test which Grayson wished to perform was not widely used until the mid-1990s; (2) the evidence sought was introduced at trial, and there was no claim that the evidence was suppressed by the prosecution or that Grayson was denied a fair trial; and (3) the DNA testing sought, even if exculpatory, could not show that he was actually innocent but only that another person was involved in the crime. Id. at 1335-36, 1337, 1339.

interference from the federal courts," (2) the plaintiff's satisfaction of "all of the requirements for a stay, including a showing of a significant possibility of success on the merits," (3) the application of "a strong equitable presumption against the grant of a stay where the claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay," and (4) protection of the "States from dilatory or speculative suits." Hill v. McDonough, ___ U.S. ___, ___, 126 S. Ct. 2096, 2104 (2006) (quoting Nelson v. Campbell, 541 U.S. 637, 649-50, 124 S. Ct. 2117, 2126 (2004). The strong interest of the State and the victims's families is in "the timely enforcement of a sentence", id. at ___, 126 S. Ct. at 2104, which acquires "an added moral dimension" once post-trial proceedings finalize. Calderon v. Thompson, 523 U.S. 538, 556, 118 S. Ct. 1489, 1501 (1998).

A. Dismissal of Arthur's § 1983 action for unjustifiable delay

　　Arthur contends that the district court erred by finding that he could not establish a reasonable likelihood of success on the merits and by applying a strong equitable presumption against the grant of a stay, because no stay was sought and there was no showing that a stay was needed for Arthur's claims to be litigated. He maintains that a denial based on the necessity for a stay was inappropriate because his action was filed before the Supreme Court denied his petition for writ of certiorari regrading his federal habeas petition and before Alabama moved the

10

Alabama Supreme Court to set his execution date. He contends that, at the time when he filed his complaint, his execution date was not imminent, and that it is unreasonable to set such a standard at a time after his complaint was filed.

In his § 1983 complaint, Arthur sought access to (1) Judy Wicker's clothing, (2) Judy Wicker's rape kit, (3) a wig and hair samples collected from Judy Wicker's car, (4) vacuum sweepings from the Wickers' den, (5) hair samples taken from a shoe, (6) spent cartridges, a bullet, and a pillow case taken from the Wickers' home, and (7) crime scene photographs that were admitted at trial.[3] He maintained that DNA testing "could" show that someone else had assaulted Judy Wicker and murdered her husband, that Judy Wicker's testimony regarding him wearing a wig was a lie, and that someone other than Arthur was at the Wicker residence on the morning of the murder. R-1 at 10.[4]

---

[3]   Arthur presents no argument regarding the shell casings, pillowcase, bullet taken from the crime scene or the crime scene photographs on appeal. We, therefore, treat these issues as abandoned. United States v. Ford, 270 F.3d 1346, 1347 (11th Cir. 2001) (per curiam).

[4]   Each of these claims was also presented in his 2001 habeas petition and his 2002 motion for leave to conduct discovery and considered by the district court. As to Judy Wicker's clothing, the district court concluded that there was no basis in the record for Arthur's belief that the blood on her clothing belonged to her assailant, Arthur XIII at 7 n.6, or to anyone other than Judy Wicker, Arthur XIV at 5. As to the rape kit, the vacuum sweepings, and the hair samples taken from the residence, the district court concluded that merely showing that another person was with Judy Wicker or in her home at some unspecified time does little to support her testimony or to further impeach her testimony about Arthur's involvement and, at best, would provide further information about Judy Wicker's veracity which was amply covered during the state trial, and that Arthur did not offer any reason to believe that testing the rape kit would help show that he was more likely than not actually innocent. Arthur XIII at 7 and n.6; Arthur XIV at 3, 5-7. As to the wig and hair samples,

11

Relying upon the analysis set forth in Rutherford v. Crosby, 438 F.3d 1087, 1092 (11th Cir.), vacated on other grounds, Rutherford v. McDonough, _ U.S. _, 126 S. Ct. 2915 (2006) ("Rutherford I"), Hill v. McDonough, _ U.S. _, _, 126 S. Ct. 2096, 2104 (2006) and Grayson II, the district court found that Arthur had unreasonably delayed in filing his § 1983 action and that, absent a stay of execution to which he was not entitled, his requests could not be litigated. Arthur XX, slip op. at __, 2007 WL 2381992 at *4, 13.

In considering the dismissal of a § 1983 challenge, courts are to apply equitable principles which mandate dismissal when the plaintiff "delayed unnecessarily in bringing the claim, . . . knowing full well that the discovery, evidentiary hearing, and decision on the merits that he demands could not possibly be accomplished" within the short period of time between filing and the scheduled execution date. Rutherford v. McDonough, 466 F.3d 970, 974 (11th Cir. 2006) ("Rutherford II") (also citing and quoting Hill, _ U.S. at _, 126 S. Ct. at 2104) ("The federal courts can and should protect States from dilatory . . .suits" or "suits

---

the district court found that expert testimony at trial indicated that the hair samples were of African American origin, and that Arthur provided no support for his speculation that different tests could impeach Judy Wicker's testimony. Arthur XIII at 7 and n.6. In denying his motion to alter or amend the judgment, the district court concluded that, although no explanation had been offered for the hair found in the car or for the lack of the hair in the wig, the findings were not inconsistent with Judy Wicker's testimony and Arthur offered no reason to believe that an examination would reveal anything other than what was already established. Arthur XIV at 5-6.

. . . filed too late in the day."); see also Grayson II at 1321 ("[C]ourts considering

dismissal of a dilatory § 1983 suit seeking injunctive relief should recognize the

'strong equitable presumption against the grant of a stay where a claim could have

been brought at such a time as to allow consideration of the merits without

requiring entry of a stay" (quoting Rutherford, 466 F.3d at 974 (quoting Hill, _

U.S. at _, 126 S. Ct. at 2104))); Williams, _ F.3d at _, 2007 WL 2368028 at *4

("[T]he district court did not abuse its discretion in dismissing Williams's § 1983

action due to his unnecessary delay, especially given the strong presumption

against the grant of equitable relief.").

     As the district court concluded, Arthur is unable to defeat King's motion to

dismiss. Arthur's case would clearly take additional time to fully litigate this

claim. See Grayson II at 1326 n.4 (noting that Grayson's § 1983 action seeking

access to physical evidence "took over four years to proceed from the district court

through the Supreme Court's denial of certiorari review."). Arthur has not argued

that the evidence was suppressed by the prosecution during his trial or that his trial

was unfair as a result of the suppression of evidence, and there was ample

evidence linking Arthur to Troy Wicker's murder. He is also unable to establish

that the DNA testing would exonerate him of murder. The numerous courts which

have reviewed his claims have provided him with procedural safeguards to protect

his liberty interest. This action, seeking DNA testing of evidence, was filed twenty-five years after the crime, fifteen years after his third conviction and death sentence, nine years after the conclusion of his appeals on direct review, five years after the conclusion of his state postconviction proceedings, six years after the initial filing of his federal habeas petition, and four days before the Supreme Court denied his petition for writ of certiorari of his federal habeas petition. Further, a plaintiff has been able to see evidence through a § 1983 action for at least five years.[5] Arthur is thus unable to show that he is entitled to the postconviction access to evidence under Grayson I.

Arthur is also not entitled to a stay. The evidence which he seeks is the same evidence that was considered by the district court during his habeas corpus petition and which will not clearly exonerate him. He is unable to show a likelihood of success on the merits and the balance of the equities weigh against the grant of a stay. Arthur sought neither a motion to expedite the proceedings nor a motion to stay his execution in the district court. The motions which he has filed with us, to expedite the briefing schedule and to stay his execution, are admissions

---

[5]    In 2002, we held that a prisoner could seek an order compelling the prosecution to produce evidence for DNA testing through an action filed pursuant to § 1983. Bradley v. Pryor, 305 F.3d 1287, 1290 (11th Cir. 2002), cert. denied, 538 U.S. 999, 123 S. Ct. 1909 (2003). We also note that, during oral argument on Arthur's federal habeas petition in 2004, Arthur's counsel was reminded that she could seek access to physical evidence in a § 1983 claim.

14

that expedited consideration and a stay are necessary.  With a 27 September 2007

execution date, the § 1983 action could not be fully litigated on the merits absent a

stay of execution.  Although "the equitable considerations in each case are

naturally different," even if Arthur would have been entitled to a decision on the

merits if he had brought his suit in time to allow consideration of the merits

without the entry of a stay, the strong presumption against a stay operates against

him.  See Jones v. Allen, 485 F.3d 635, 641 n. 4 (11th Cir.), cert. denied, _ U.S. _,

127 S. Ct. 2160 (2007).

## B.  Denial of Arthur's motion to alter or amend the judgment

After the district court had dismissed his complaint and Arthur had appealed

that dismissal, Arthur timely filed a motion to alter or amend the judgment

pursuant to Fed. R. Civ. P. 59(e) in the district court.  In this motion, he argued,

inter alia, that a new affidavit from Ray Melson provided evidence of Arthur's

innocence.  In support of this motion, he submitted three affidavits from Melson

and an affidavit from Stephen Gustat.  The affidavits from Melson provide Arthur

with an alibi, recant that alibi, and repudiate the recantation.

The district court discredited Melson's third affidavit because it was

unsworn, created more questions than it answered regarding Melson's credibility,

"actually diminishe[d] the value of anything Melson may have [had] to say to the

point of no credibility at all," and was filed only as "a last-minute effort" because

it was not filed earlier.[6]  Arthur XXI, slip op. at __, 2007 WL 2539962 at *2.  It

concluded that Arthur's argument that he was not afforded significant procedural

---

[6]  The district court explained,
[d]uring the course of Arthur's postconviction litigation, Melson . . . provided two affidavits; one affidavit alleging that Melson saw Arthur on the day of the murder, and a second recanting the first.  His third statement allegedly sheds light on his previous inconsistencies.  In his first affidavit dated August 2, 2002, Melson testified that Arthur visited Copper Mobile Homes of Decatur, Melson's employer, between 8:00 a.m. and 9:00 a.m. on the day of Troy's murder.  Melson testified that he and Alphonso High spoke to Arthur "for about 20 to 30 minutes."  On September 20, 2002, Melson recanted his first affidavit.  Melson recalled that he was on medication during the time he signed the first affidavit, and he "did not really remember what was in the affidavit, or if [he] even read it the day that [he] singed it."  Melson testified that he "cannot say with any certainty" that he saw Arthur on the morning of Troy's murder.  Now, in an attempt to explain why he recanted his first affidavit with his second, Melson's unsworn statement, dated August 22, 2007, alleges that he was on pain medication the day that he signed the *second* affidavit and was unaware of its exact contents at the time.  Moreover, he alleges that he did indeed see Arthur on the morning of Troy's murder.  Melson now claims, for the first time, that the day was memorable because he delivered a double-wide trailer to Birmingham, which was "unusual," and that "the trailer got stuck in the mud while [he] was transporting it . . . ."  Arthur XXI, slip op. at __, 2007 WL 2539962 at *1.

The district court noted a "number of important reasons" for not crediting Melson's third affidavit: (1) "it is unsworn," and (2) "creates more questions than it answers about the credibility of Melson," including (a) "[t]he effects of Melson's prescription drug use and abuse (used as an excuse in both retractions)", (b) his not coming forward during any of the Arthur's "three highly publicized trial and subsequent death sentences," (c) "the addition of still more new facts," such as the delivery of the double-wide trailer and that it got stuck, and (d) Melson's "ability to clearly remember an exact date and time over twenty-five years ago."  Id. at __, 2007 WL 2539962 at *2.

Attached to King's brief is a fourth affidavit of Melson (which was not provided to the district court).  King Br. at Exh. A.  In this sworn affidavit dated 5 September 2007, Melson states that, although he "remember[s] seeing . . . Arthur on one morning around the time of the . . . Wicker murder," he "do[es] not . . . remember what day of the week it was, exactly what time of day it was," or whether he was "100% sure that [he] saw . . . Arthur on the day of the murder" and explained that "[i]t is simply hard to remember everything that happened in 1982.  Id.

16

safeguards was considered on habeas, that he failed to raise his ineffective

assistance of counsel claim in his initial § 1983 complaint, and that the court had

properly considered Arthur's delay in dismissing his complaint. Id. at __, 2007

WL 2539962 at *2-3.

  We review the denial of a Rule 59 motion for abuse of discretion. Drago v.

Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006). "The only grounds for granting [a

Rule 59] motion are newly-discovered evidence or manifest errors of law or fact."

In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999). "[A] Rule 59(e) motion

[cannot be used] to relitigate old matters, raise argument or present evidence that

could have been raised prior to the entry of judgment." Michael Linet, Inc. v.

Village of Wellington, Fla., 408 F.3d 757,763 (11th Cir. 2005).

  Arthur cannot show that the district court abused its discretion in denying

his motion to alter or amend the judgment.   Because Melson's affidavit was

unsworn, it was not properly considered by the district court. See Holloman v.

Jacksonville Housing Auth., No. 06-10108, slip op. at __, 2007 WL 245555 at *2

(per curiam) ("unsworn statements, even from pro se parties, should not be

'consider[ed] in determining the propriety of summary judgment") (quoting

Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980) (per curiam)).  To the extent

that it was considered, however, it was not newly discovered.  It could have been

17

discovered during the five years after Melson had repudiated his first affidavit, and filed with the complaint. As the district court held, by repudiating a repudiation of his initial affidavit, Melson's third affidavit raised more questions, at least regarding his credibility, than it answered.

## III. CONCLUSION

We conclude that the district court did not abuse its discretion in dismissing Arthur's § 1983 action, especially given the strong presumption against the grant of equitable relief. There was no justification for Arthur's failure to bring his request for physical evidence for DNA testing earlier to allow sufficient time for full adjudication on the merits of this claim. The district court also did not abuse its discretion in denying Arthur's motion to alter or amend the judgment based on newly discovered evidence. Accordingly, the district court's judgment of dismissal is AFFIRMED. Arthur's motion for a stay of execution pending appeal is DENIED as moot.

BARKETT, Circuit Judge, concurring in result:

I agree that Arthur is not legally entitled to relief on this claim.

A True Copy - Attested:
Clerk, U.S. Court of Appeals,
Eleventh Circuit

Deputy Clerk
Atlanta, Georgia

19